Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence after the record was closed by the Full Commission or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Employer-employee relationship existed at the time of the alleged incidents.
2. North Carolina Farm Bureau Mutual Insurance Company was the carrier for defendant-employer Speechcenter, Inc., (I.C. 143065) at the time of the incident of 12 February 1990, and Continental Casualty Company was the carrier for defendant-employer Rotech Medical Corporation (I.C. 640111) at the time of the incident of 21 February 1996, and that both incidents involved admitted cases of liability.
3. The parties were subject to the North Carolina Workers Compensation Act at the time of the incidents, the employers employing the requisite number of employees to be bound under the provisions of said Act.
4. The average weekly wage of plaintiff at the time of the 12 February 1990 injury (I.C. 143065) was $361. 51, yielding a weekly compensation rate of $241.02.
5. The average weekly wage of plaintiff at the time of the 21 February 1996 (I.C. 640111) was $340.02 yielding a weekly compensation rate of $226.68.
6. The parties stipulate to all Industrial Commission forms contained within the two involved Industrial Commission files, the recorded statement of Gale Howard dated 6 June 1996, and the surveillance video.
7. The parties stipulate to the authenticity of the 31 October 1996 letter from R. Michael Wells to Linda Lawing (2 pages), the 5 May 1997 letter from Linda Lawing to Gillie Spratt and the 25 July 1997 letter of Stephen A. Greer and letter dated 11 February 1998 from Sandra Czurylo, PT.
In addition, the parties stipulated into evidence a notebook containing medical and rehabilitation records and reports.
The Pre-Trial Agreement dated 5 February 1998, is incorporated by reference.
***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old and is a high school graduate. She has also had additional schooling in business related courses. In July 1989 she began working for defendant Speechcenter as an executive assistant. As part of her job duties, she attended a seminar in Pinehurst in February 1990, and on 12 February, while participating in the seminar, she sustained a compensable injury by accident when her heel became caught in the carpet, causing her to fall to the floor. As a result of the fall, she hurt her right knee and ankle and her neck area. The knee and ankle symptoms resolved thereafter, but, during the next eight months, she developed increasing problems with her neck and ultimately with her right arm.
2. In November 1990, plaintiff was referred to Dr. Bell, a neurosurgeon, for evaluation. Dr. Bell ordered an MRI which revealed a small spur at C5-6 which he believed was causing her symptoms. He subsequently recommended surgery. On 29 May 1991, he operated to decompress the C5-6 interspace. Plaintiff initially did well after the surgery but by August 1991 was reporting increased symptoms. Diagnostic testing did not reveal evidence of spinal cord or nerve root impingement, so he treated her conservatively with medication and physical therapy.
3. Plaintiff returned to work following her operation but continued to experience symptoms. Consequently, in May 1992 she went to neurosurgeon Dr. O. Del Curling for another opinion. He prescribed further conservative treatment, but the treatment did not provide significant relief. Dr. Curling recommended surgery to depress and fuse both the C5-6 and the C6-7 interspaces. The operation was performed on 21 September 1992. After the surgery plaintiff did very well with near resolution of the symptoms in her right arm. However, in June 1993 she returned to Dr. Curling complaining of increased pain. X-rays revealed that one of the screws which had been inserted during the operation had broken. Despite the finding, Dr. Curling thought the bones showed good signs of fusion and, since the screw was just a temporary measure to hold the bones in place until they could fuse, he did not believe that the finding was significant.
4. During June 1993, plaintiff stopped working for Speechcenter under disputed circumstances. However, she did not report for work when released to do so by Dr. Curling. She worked at her husbands bar and also began working at a bookstore. In September 1993, she returned to Dr. Curling with complaints of increased arm pain. Dr. Curling ordered additional diagnostic tests which were unremarkable except for the post-surgical changes, and he continued plaintiffs conservative treatment and restricted her work activities. On 14 November 1993, Dr. Curling advised that plaintiff had reached maximum medical improvement with a 15% permanent partial disability to her back. He expected that she would continue to have some chronic pain, so he gave her permanent work restrictions. Plaintiff was to refrain from lifting greater than 15 pounds, to limit her bending, crawling, twisting, reaching or overhead work, and to take frequent breaks.
5. Dr. Curling saw plaintiff again in March, April and September 1994. At the last office visit, he recommended that plaintiff undergo a pain clinic and epidural steroid injections. He advised that plaintiff did not need to be followed by a neurosurgeon and released her to the care of her family doctor who he anticipated would provide symptomatic treatment for what he considered a chronic pain problem.
6. Plaintiff was evaluated and accepted for treatment by The Pain Management Center in High Point. They recommended that she first be admitted to the hospital for detoxification from narcotic pain medication. On 3 January 1995, plaintiff was admitted to High Point Regional Hospital. Preliminary drug screening was positive not only for the pain medication but also for cocaine. The withdrawal program went smoothly and plaintiff was discharged on 6 January 1995. Thereafter, plaintiff underwent the pain management program which was completed on 3 February 1995.
7. Defendants Speechcenter and its carrier, North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau), accepted liability for benefits under the Workers Compensation Act for plaintiffs 12 January 1990 injury pursuant to a Form 21 agreement and paid compensation to her for temporary total disability as well as for permanent partial disability as rated by Dr. Curling. They also resumed payment of temporary total disability compensation during the time she went through the pain management program. According to the Form 28B filed in I.C. 143065 on 7 February 1995, the last compensation check was forwarded to her on 3 February 1995.
8. By 3 February 1995, plaintiff had been employed by defendant Rotech Medical Corporation (Rotech) for approximately six months as a customer service representative. Her job involved taking orders for medical supplies. She returned to work in that capacity after completing the pain management program in February and was able to perform her job duties. However, in April, May and August she presented to Dr. Beard, her family doctor, for complaints of neck pain. Dr. Beard referred plaintiff to Dr. Meloy who saw her beginning in September 1995. Dr. Meloy gave plaintiff three epidural steroid injections. Despite the treatment, plaintiff reported continued problems with neck pain such that she had to sleep in a recliner. By December 1995 she was requesting another neurosurgical opinion; however, Farm Bureau would not authorize an evaluation at that time.
9. Despite her symptoms, plaintiff was able to continue working at Rotech and to accept a second job at a department store beginning in November 1995. She worked in both capacities until February 1996.
10. On 21 February 1996 plaintiff sustained another compensable injury by accident while working for Rotech. It was her practice to help an elderly patient with his oxygen tanks, and on this occasion one of the tanks tipped over in his truck as she was assisting him. When plaintiff reached out to grab it, she twisted and felt a pulling sensation in her neck. Her symptoms gradually progressed to the point that she sought medical treatment. Plaintiff was eventually referred to Dr. Brown, a neurosurgeon, who examined her on 13 March 1996. After ordering a myelogram/CT scan, Dr. Brown concluded that part of her symptoms were pre-existing and might be due to a non-union of the fusion at C6-7 plus the fractured screw at C7. He also diagnosed her with a cervical strain from her 21 February 1996 injury.
11. Dr. Brown treated plaintiff conservatively. By June 1996, he concluded that surgery might improve her pain. Before pursuing the surgical option, he first referred her to a spine program for a more comprehensive treatment approach. Plaintiff entered the Functional Restoration Program on 22 July 1996, and completed it on 9 August 1996. The program was modified somewhat due to plaintiffs complaints of pain, but when she completed it, Dr. Davis advised that she was capable of returning to work. An on-site analysis of plaintiffs job with Rotech had been performed as part of the program, and her employer had indicated that plaintiff would not be required to handle oxygen tanks or to stock supplies. When advised of the work release at the discharge conference, plaintiff indicated that she had decided to return to school rather than to her previous job and that she was first going to go on vacation.
12. Sometime during the next month, plaintiff returned to work for Rotech and worked parts of three days. She left early on each occasion reporting increased pain. On 4 September 1996, plaintiff returned to Dr. Brown who examined her, but could find nothing new. Plaintiff advised Dr. Brown that she wanted the surgery he had previously recommended, so he ordered tomograms to better visualize the "interspace in question. Dr. Brown was also of the opinion that plaintiff reached maximum medical improvement by 4 September 1996, as far as her 1996 injury was concerned, that the 1996 injury did not result in any permanent partial disability, and that her continued problems related back to her first injury of January 1990.
13. Rotech and its carrier, Continental Casualty, admitted liability for benefits under the Workers Compensation Act for plaintiffs 21 February 1996 injury by accident, and paid compensation to her for temporary total disability pursuant to a Form 60 admission of liability, filed with the Industrial Commission. However, they took the position that they had paid all of the benefits which were due as a result of the injury with Rotech. Dr. Brown had reported that plaintiff was back to her baseline condition with no additional work restrictions or permanent partial disability resulting from her second injury as of 4 September 1996. Farm Bureau, however, also denied liability for further benefits from the earlier injury. Because of the dispute between the two insurance carriers, there was a delay in obtaining the tomograms ordered by Dr. Brown, but they were subsequently performed.
14. By letter dated 31 October 1996, plaintiff filed with the Industrial Commission a Notice of Change/Worsening of Condition which was accompanied by notes from Dr. Brown regarding plaintiffs disability.
15. Dr. Brown next examined plaintiff on 10 December 1996, and he found that the tomograms showed good fusion at C5-6 but non-union at C6-7. In his opinion, surgery to refuse the lower level would offer plaintiff a significant chance of reducing her pain symptoms, although it would not provide complete pain relief.
16. Both insurance companies refused to pay for the surgery recommended, and plaintiff did not undergo the procedure until 14 September 1998. The only treatment of record that plaintiff received in 1997 was provided by Dr. Beard who saw her on three occasions for further complaints of neck pain.
17. Farm Bureau sent plaintiffs medical records to Dr. Curling, who had been in a severe motor vehicle accident and had not been seeing patients for an extended period. Dr. Curling last treated plaintiff in September 1994. His letter to the adjuster and his testimony regarding that letter was not allowed into evidence for substantive purposes, but his testimony was otherwise allowed. He reviewed the videotape taken by the private investigators and found that plaintiff appeared comfortable while performing light to medium activities and that she appeared to have good range of motion of her neck. Based upon the medical records he reviewed, he disagreed with Dr. Brown regarding the advisability of surgery because, in his opinion, the vertebrae in question had fused. However, the radiologist who reviewed the films in 1996 also found a non-union at C6-7 which supported Dr. Browns position.
18. On 14 September 1998, plaintiff underwent a re-exploration of the anterior cervical area and a fusion at C6-7, with an iliac crest bone graft and plating removal. Subsequent to the surgery, plaintiffs symptoms began to resolve and by 9 January 1999, plaintiff reported that her neck pain, and right arm pain and numbness had all improved. Dr. Brown is of the opinion that plaintiff is restricted from any long-term activity in any position, and from overhead work involving significant lifting or repetitive neck movement. In Dr. Browns opinion, due to the many restrictions placed upon plaintiffs ability to resume working, she remains totally disabled. Dr. Brown did not testify that plaintiff has reached maximum medical improvement.
19. During 1997, Farm Bureau hired a private investigations firm to conduct surveillance on plaintiff. She was observed at various times in March, April, May, June and October 1997 and in January 1998. The videotape of her activities revealed that she exercised at World Gym, she shopped frequently and she carried and loaded bags of groceries into her car without apparent difficulty. She also used her arms without apparent difficulty and turned her head freely while driving her car, including when she had to back out of a parking space. After reviewing the video, Dr. Curling stated that plaintiff was not doing anything beyond what had been recommended for her, and that all of the activities she was shown performing were in the light to medium range.
20. The condition for which plaintiff required additional surgery was a direct and natural result of her injury with Speechcenter. The second injury at Rotech only resulted in a cervical strain and a temporary aggravation of her symptoms which had resolved by 4 September 1996. She reached maximum medical improvement with respect to her second injury by 4 September 1996, having sustained no permanent partial disability. After that date, her condition was due solely to the first injury of 12 January 1990.
21. Plaintiff reopened her claim against Speechcenter with the Industrial Commission on a timely basis. Sufficient evidence has been presented to demonstrate that plaintiff suffered a substantial change of condition regarding her 12 January 1990 injury, due to non-union of her prior fusion at C6-7. As a result of pain resulting from her 12 January 1990 injury, plaintiff was totally incapable of earning wages in any employment after 4 September 1996.
22. The evidence did not reveal what compensation was paid by Rotech and its carrier after August 1996. However, an administrative decision and order was filed July 15, 1997 disapproving their application to stop payment of compensation. That order was improvidently allowed, and the evidence shows that defendant Rotechs obligation to provide plaintiff with compensation ended on 4 September 1996.
23. As a result of plaintiffs change in condition, she became totally disabled as a result of her 12 January 1990 injury on 5 September 1996, through her surgery on 14 September 1998, and continuing until she reaches maximum medical improvement.
24. There were reasonable grounds for defendants to defend this claim.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. (I.C. 640111) As a result of her 21 February 1996 injury by accident, plaintiff was temporarily totally disabled until she reached maximum medical improvement without permanent partial disability on 4 September 1996. Plaintiffs continuing disability was not related to the 21 February 1996 injury; therefore, defendant Rotech was not obligated to provide compensation after that date. N.C. Gen. Stat. 97-29.
2. (I.C. 640111) Because plaintiff was not entitled to further compensation from defendant Rotech after 4 September 1996, defendants Rotech and Continental Casualty have overpaid compensation to her and are entitled to a credit for that amount. N.C. Gen. Stat. 97-31, 97-42.
3. (I.C. 640111) Plaintiff is entitled to have defendants Rotech and Continental Casualty provide all medical compensation arising from the 21 February 1996 injury by accident. However, medical treatment provided after 4 September 1996, was not related to this injury and these defendants are not liable to pay for it. N.C. Gen. Stat. 97-2(19); 97-25.
4. (I.C. 143065) A change of condition is defined as a substantial change in the claimants physical capacity to earn wages, occurring after a final award of compensation, different from that existing when the award was made. Bailey v. Sears Roebuck Co.,131 N.C. App. 649, 508 S.E.2d 831 (1998). In this case, plaintiff has demonstrated a change in her medical condition which has resulted in total disability following the final award from her 12 January 1990 injury by accident; therefore, the Industrial Commission has the authority to increase the compensation previously awarded. N.C. Gen Stat. 97-47.
5. (I.C. 143065) Plaintiff is entitled to temporary total disability compensation to be paid by defendants Speechcenter and Farm Bureau from 5 September 1996 and continuing until she reaches maximum medical improvement from the treatment for her 12 January 1990 injury by accident. N.C. Gen. Stat. 97-29.
6. (I.C. 143065) Plaintiff is entitled to have defendants Speechcenter and Farm Bureau provide all medical compensation arising from her injury by accident of 12 January 1990, including the medical treatment rendered after 4 September 1996, which treatment was a proximate result of the injury. N.C. Gen. Stat.97-2(19); 97-25.
7. Plaintiff is not entitled to have attorneys fees assessed against defendants in that there were reasonable grounds for them to defend this claim. N.C. Gen. Stat. 97-88. 1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. (I.C. 640111) Defendants Rotech and Continental Casualty have overpaid compensation to plaintiff and are entitled to reimbursement from defendants Speechcenter and Farm Bureau for compensation paid to plaintiff after 4 September 1996.
2. (I.C. 640111) Defendants Rotech and Continental Casualty shall pay all medical expenses incurred by plaintiff as a result of this injury by accident from the date of injury on 21 February 1996 through 4 September 1996.
3. (I.C. 143065) Defendants Speechcenter and Farm Bureau shall pay plaintiff temporary total disability compensation in the weekly amount of $241. 02 from 5 September 1996 and continuing until further order of the Industrial Commission, subject to attorneys fees awarded below. That amount which has accrued as of the date of this Opinion and Award shall be paid in a lump sum.
4. (I.C. 143065) Defendants Speechcenter and Farm Bureau shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including the treatment rendered to plaintiff after 4 September 1996
5. Counsel for plaintiff shall receive a reasonable attorneys fee of 25% of plaintiffs compensation as awarded in paragraph 3 above. One fourth of plaintiffs lump sum award shall be paid to plaintiffs counsel directly, and every fourth subsequent payment shall be paid to plaintiffs counsel.
6. Defendants Speechcenter and Farm Bureau shall pay the costs.
This the ___ day of August, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
J. Howard Bunn participated in the Full Commissions review hearing, but retired prior to decision in this case.
J. HOWARD BUNN, Jr. CHAIRMAN