SUZANNE BAILEY, Employee/Plaintiff v. SEARS ROEBUCK & COMPANY, Employer/Defendant, and LUMBERMENS MUTUAL CASUALTY COMPANY, Carrier/Defendant

No. COA97-1573

(Filed 15 December 1998)

## 1. Workers' Compensation— findings—recitation of testimony

There was sufficient competent evidence in the record to support each of the Industrial Commission's findings in a workers' compensation action arising from a foot injury where the Court of Appeals reluctantly accepted the Commission's recitations of testimony as findings of fact.

**2. Workers' Compensation— sufficiency of evidence—aggravation of existing cerebral palsy**

There was sufficient competent evidence in a workers' compensation action to support the Industrial Commission's determination that plaintiff's 1993 injury did not aggravate her cerebral palsy or in any way cause her 1995 foot condition.

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 25 August 1997. Heard in the Court of Appeals 15 September 1998.

*Robert A. Lauver, P.A., by Robert A. Lauver, for plaintiff-appellant.*

*Orbock Bowden Ruark & Dillard, P.C., by Barbara E. Ruark, for defendant-appellee.*

SMITH, Judge.

Pertinent facts and procedural information include the following: During a 12 April 1996 Industrial Commission Hearing concerning plaintiff's request for additional workers' compensation benefits, plaintiff testified to her pre-existing cerebral palsy condition to refute contentions that her cerebral palsy caused her recent 1995 foot problems. Plaintiff testified, in part, that she had suffered from cerebral palsy since birth and at age four underwent bilateral heel cord lengthening. She also testified she had not been treated or had problems with her cerebral palsy since age ten. Plaintiff maintained that her 1995 foot problems were caused by her 1993 work-related foot injury and not caused by her cerebral palsy.

On 13 July 1993, plaintiff injured her left foot (the 1993 injury) while at work. Pursuant to a Form 21 Agreement entered 30 July 1993, defendants agreed the accident was a compensable injury arising in the course of plaintiff's employment. Defendants paid plaintiff compensation at a rate of $146.35 per week beginning 21 July 1993, which continued until the end of August when she returned to work. Dr. Edward Weller (Dr. Weller), treated plaintiff for the compensable injury from 14 July 1993 through 6 September 1993, when he released her from treatment. On 8 September 1993, Dr. Weller rated plaintiff as having a 5% percent permanent partial disability to her left foot. Upon receiving this rating report defendants entered into a Form 26 .Agreement admitting liability and agreeing to pay for the disability. Plaintiff received her final disability payment on 12 November 1993.

## BAILEY v. SEARS ROEBUCK & CO.

[131 N.C. App. 649 (1998)]

Plaintiff testified that after the accident she had difficulty placing weight on her left foot and was forced to use a walker at work due to pain. Plaintiff testified her mobility and level of activity decreased due to the increase in pain and restrictive casts placed on her foot.

After her September 1993 release, plaintiff did not see Dr. Weller with regard to foot pain until 8 February 1995, when she visited him complaining of tightness, pain and swelling on the top of her left foot near her fourth and fifth toes. This area was the site of her 13 July 1993 fracture. In June 1995, Dr. Weller noted that plaintiff's Achilles tendon had become "incredibly tight" compared to his findings in July and August of 1993. However, Weller testified that such tightening is a natural process that occurs when an individual has cerebral palsy. To rebut that contention plaintiff testified she had not suffered any similar problems with her right foot. On 25 July 1995, plaintiff underwent surgery similar to that performed at age four, to lengthen her left Achilles tendon. Plaintiff was unable to work from 25 July 1995 to 16 January 1996, when she returned to her regular duties.

Dr. Robert Teasdall (Dr. Teasdall), a board certified orthopaedic surgeon specializing in foot and ankle treatment, examined plaintiff on 10 October 1995. Dr. Teasdall opined that plaintiff's cerebral palsy would be a more likely explanation of how the problems with her heel cord had developed. He also indicated, based on plaintiff's previous medical history, the problems in her foot were not related to the fracture she sustained in July 1993 but were the direct result of her cerebral palsy.

On 23 October 1995, plaintiff filed a Form 33 Request for Hearing seeking additional benefits pursuant to N.C. Gen. Stat. § 97-47 (1991) due to an alleged change in the condition of her left foot. In an Opinion and Award filed 18 February 1997 denying plaintiff's claim, the Deputy Commissioner found that plaintiff did not suffer a compensable change in condition. Pursuant to plaintiff's appeal from that judgment the Full Commission filed an Opinion and Award 25 August 1997, modifying and affirming the Deputy Commissioner's judgment. The Full Commission made the following pertinent findings of fact:

4. Plaintiff returned to work at the end of August 1993 and she was able to perform her job. Plaintiff was released by Dr. Weller on September 6, 1993.

5. Plaintiff did not see Dr. Weller again until February 8, 1995, at which point she was complaining of pain and swelling in her left

foot. Plaintiff had not contacted Dr. Weller between September 6, 1993 and February 8, 1995 concerning any problems with her left foot.

6. Plaintiff was next seen by Dr. Weller in June 1995, when plaintiff was complaining of tightness in her left ankle.

7. Plaintiff has cerebral palsy and it causes the body's motor system to become very tight, and in plaintiff's case somewhat spastic.

8. In July 1995, Dr. Weller performed a surgical release of plaintiff's left Achilles tendon. This release was performed because it had tightened to the point that plaintiff was not able to place her foot flat upon the floor.

. . . .

12. The tightened Achilles tendon for which plaintiff underwent treatment beginning February 1993 was not proven by the greater weight of the medical evidence to have been a direct and natural result of her injury at work on July 13, 1993. Consequently, plaintiff did not sustain a material change for the worse in the condition she suffered as a result of that injury.

Based on these findings, the Commission concluded:

1. Plaintiff did not suffer a material change of condition as to her original injury of July 13, 1993. N.C. Gen. Stat. § 97-47.

2. Plaintiff has failed to prove by the greater weight of the evidence that the tightened Achilles tendon for which she underwent treatment beginning February 1995 was a natural consequence of her injury of July 13, 1993. N.C. Gen. Stat. § 97-2.

Plaintiff filed timely notice of appeal to this Court.

Our standard of review on an appeal of an award by the Industrial Commission is "whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." *Hedrick v. PPG Industries,* 126 N.C. App. 354, 357, 484 S.E.2d 853, 856 (1997) (citing *Sidney v. Raleigh Paving & Patching, Inc.,* 109 N.C. App. 254, 256, 426 S.E.2d 424, 426 (1993)). The Commission's findings of fact are "conclusive on appeal if supported by competent evidence," *Hoyle v. Carolina Associated Mills,* 122 N.C. App. 462, 463, 470 S.E.2d 357, 358 (1996), even when there is "evidence to support a con-

trary finding." *Hedrick*, 126 N.C. App. at 357, 484 S.E.2d at 856. Furthermore, the Commission is the sole judge of the credibility of the witnesses as well as how much weight their testimony should be given. *Id.*

[1] Plaintiff contends the Commission failed to consider all the relevant evidence in making its findings of fact. Specifically, plaintiff argues the Commission erred in not determining: (1) whether plaintiff complained of mid-foot pain in 1995, and (2) whether an injury to the foot can aggravate plaintiff's pre-existing cerebral palsy. We disagree.

"The Work[er]'s Compensation Act . . . vests the Industrial Commission with full authority to find essential facts," *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 433, 144 S.E.2d 272, 274 (1965), and we "may set aside findings of fact only upon the ground they lack evidentiary support." *Id.* at 434, 144 S.E.2d at 274. The Commission chooses what findings to make based on its consideration of the evidence. This court is not at liberty to supplement the Commission's findings, but is limited to determining if those findings are supported by competent evidence. Furthermore, the Commission expressly referred to plaintiff's testimony and Dr. Weller's and Dr. Teasdall's depositions in it's findings of fact, indicating its consideration of all the evidence presented.

Plaintiff further contends findings of fact numbers 6, 8, 9, 10, 11, and 12 are not supported by competent evidence. We disagree. The Commission's number 6 finding of fact, that plaintiff complained of tightness in her left ankle in June 1995, was supported by Dr. Weller's deposition concerning plaintiff's June 1995 visit. Dr. Weller stated "the reason [plaintiff] was having trouble getting around is because her [left] ankle was becoming plantar-flexed" and "stiffer." This finding, as well as finding number 8, was supported by competent evidence in the record.

Findings of fact 9, 10, and 11, are not findings at all, but mere recitals of Dr. Weller's and Dr. Teasdall's medical testimonies. "[R]ecitations of the testimony of each witness *do not* constitute *findings of fact* . . . because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 n.1 (1984). Our Supreme Court stated that the "Industrial Commission frequently couches its findings of fact in the form of recitations of testimony without declaring

BAILEY v. SEARS ROEBUCK & CO.

[131 N.C. App. 649 (1998)]

whether it finds the testimony to be a fact." *Peoples v. Cone Mills Corporation*, 316 N.C. 426, 442 n.7, 342 S.E.2d 798, 808 n.7 (1986). The Court noted it's practice has been to "interpret the Commission's . . . recit[ation of] testimony to mean that [the Commission] does find the recited testimony to be a fact," but the Court strongly suggested that in the future the Commission make its findings in the form of declarations of fact rather than recitations of testimony. *Id.* We reluctantly accept the Commission's recitations as findings of fact and hold there is sufficient competent evidence in the record to support each finding.

[2] Plaintiff also contends the Commission's finding that plaintiff's 1995 condition was not proven to be a direct and natural result of her 1993 compensable injury was not supported by the evidence. Plaintiff argues she provided sufficient medical evidence to establish that her change in condition was causally related to the 1993 injury and not solely caused by her cerebral palsy. She contends the medical evidence established that the 1993 work injury aggravated her pre-existing cerebral palsy condition.

A change of condition for purposes of N.C. Gen. Stat. § 97-47, is a substantial change in physical capacity to earn wages, occurring after a final award of compensation, that is different from that existing when the award was made. *Pratt v. Central Upholstery Co., Inc.*, 252 N.C. 716, 722, 115 S.E.2d 27, 33-34 (1960). To recover compensation for changed conditions caused by aggravation of an injury, plaintiff must prove by the greater weight of the evidence that her change in condition was a natural consequence of the 1993 injury. N.C. Gen. Stat. § 97-2(6) (1997) and N.C. Gen. Stat. § 97-47.

Plaintiff contends the 1993 injury decreased her mobility and activity level, thereby aggravating and in turn activating the tightness and stiffness associated with cerebral palsy. Plaintiff claims her changed condition in 1995 resulted from that aggravation of her pre-existing cerebral palsy.

There is competent evidence in both physicians' depositions to support the Commission's finding that plaintiff did not prove a clear causal connection between the 1993 injury and her 1995 problems. Both Dr. Weller and Dr. Teasdall refused to state with medical certainty that plaintiff's 1995 problems resulted directly from her 1993 injury. Rather, both agreed it was more likely that plaintiff's 1995 condition resulted from her cerebral palsy, known to cause such stiffness.

**TERRELL v. LAWYERS MUT. LIAB. INS. CO.**

[131 N.C. App. 655 (1998)]

"It is for the Commission, not for this Court, to weigh this evidence and to assess its credibility," *Hoyle*, 122 N.C. App. at 467, 470 S.E.2d at 360, so when conflicting evidence is presented, "the Commission's finding of causal connection between the accident and the disability is conclusive," *Anderson*, 265 N.C. at 434, 144 S.E.2d at 275. There is sufficient evidence to support the Commission's determination that the 1993 injury did not aggravate plaintiff's cerebral palsy or in any way cause her 1995 foot condition.

Based on the foregoing analysis, we affirm.

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.