***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's decision in part and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction aver the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and employer on May 2, 1999 through April 18, 2001.
3. American Interstate Insurance was the carrier on the risk at the time of injury.
4. Plaintiff's average weekly wage on May 2, 1999 was $545.30, resulting in a compensation rate of $363.55.
5. Plaintiff sustained an admittedly compensable injury to his right thumb on May 2, 1999.
6. Defendants deny that any compensation is due after April 18, 2001.
7. Plaintiff signed a Form 21 agreement for payment of a ten percent (10%) permanent impairment rating to his right thumb, which was approved by the Industrial Commission on March 23, 2000.
8. The issue to be determined by the Commission is:
 Whether plaintiff is entitled to any additional benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon all of the competent, credible evidence in the record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff worked five years as a forklift operator for Jordan-Holman Lumber, Inc., a job that requires use of both hands, and occasional lifting of 40-50 pounds. The operator also uses a hand held bander to put straps around stacks of wood. On May 2, 1999 he sustained a compensable injury to his right thumb when it was struck by a piece of lumber which was expelled from a machine.
2. Initial treatment included a November 19, 1999 first surgery where Dr. Mark McGinnis removed the entire palmaris longus tendon to reconstruct plaintiff's right thumb metacarpal phalangeal joint. The palmaris longus tendon is located in the forearm and about 7-8 inches long. The graft surgery has left a noticeable scar/lump of tissue on plaintiff's forearm at one end of the donor site.
3. On February 18, 2000 Dr. McGinnis rated plaintiff at 10% of the right thumb, which was paid under a Form 21 approved by the Commission March 23, 2000.
4. The reconstructive surgery performed by Dr. McGinnis was a failure. Dr. McGinnis recommended and defendants approved an October 19, 2000 fusion of plaintiff's right thumb metacarpal joint. The fusion significantly restricted the mobility and range of motion of plaintiff's thumb. Defendants paid additional temporary total compensation October 20, 2000 through October 29, 2000 as shown in a Form 28B dated June 7, 2001.
5. As of April 18, 2001, plaintiff was still under continuing work restrictions by Dr. McGinnis of limited use of the right hand. On that date, the employer "laid off" plaintiff. After the fusion surgery, the employer had sent plaintiff back to the forklift operator job which exceeded Dr. McGinnis' work restrictions. Plaintiff had continued to experience severe pain and was slower in doing the job which required full use of both hands.
6. At the visit on April 27, 2001, plaintiff still had incomplete surgical fusion of the metacarpal joint. A repeat fusion was discussed. While Dr. McGinnis' note mentions unrestricted work; however. Dr. McGinnis testified plaintiff should only do what he could with his right hand, and, obviously, should avoid painful activity.
7. As of August 31, 2001, plaintiff's condition had again worsened with what Dr. McGinnis described, in part, as "a significant problem with a delayed union" (i.e. metacarpal fusion) and right wrist tenosynovitis.
8. Since being "laid off" on April 18, 2001, plaintiff has made a good faith job search without locating any employment. As of August 31, 2001, Dr. McGinnis "officially" restricted plaintiff to limit use of his right hand and to wear a splint. Plaintiff has been unable to find employment.
9. After the fusion surgery, Dr. McGinnis refused to increase his 10% of thumb disability rating. Dr. McGinnis testified, upon questioning by plaintiff's counsel, that plaintiff's thumb metacarpal joint fusion meets the criteria under the North Carolina Rating Guide in the Section "Upper Extremities — A. Ankylosis And Limited Motion With Pain — 1. Fingers c. Ankylosis of metacarpal — phalangeal joint (in optimum position) = 45% of digit". Dr. McGinnis attempted to make a distinction between thumb and other fingers not allowed for in the North Carolina Rating Guide. Further, Dr. McGinnis testified he used the American Medical Association Rating Guide which is not acceptable under North Carolina Industrial Commission decisions.
10. Plaintiff's second opinion. Dr. Maher Habashi, a board certified orthopaedic surgeon, noted under the Rating Guide the rating should be 50% of the right thumb as the thumb was not fused in optimum position. Not having the thumb fused is optimum position interferes with grip. The Full Commission finds that the rating should be 50%.
11. After the March 9, 2000 Form 21, plaintiff's condition changed when he underwent an October 20, 2000 right thumb metacarpophalangeal joint arthrodesis (fusion). Plaintiff is still being treated for his injury.
12. Because of his compensable injury, plaintiff has been unable to earn wages from and after April 18, 2001. Plaintiff is entitled to compensation at the rate of $322.55 per week for each week after April 18, 2001 that he has been unable to earn wages because of his compensable injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff experienced a change of condition after he was paid a 10% rating to his thumb. His first surgery was a failure and his second surgery increased his rating from 10% to 50% and left his thumb fused in a suboptimal position resulting in loss of grip. N.C. Gen. Stat. §97-47. A change of condition is a substantial change in an employee's physical capacity to earn wages, occurring after a final award of compensation, different from that existing when the award was made.Bailey v. Sears Roebuck and Co., 131 N.C. App. 649, 508 S.E.2d 831
(1998). The primary factor in determining if a change of condition has occurred is whether the employee's physical capacity to earn wages has been affected. Grantham v. R. G. Berry Corp., 127 N.C. App. 529,491 S.E.2d 678 (1997), cert. denied, 347 N.C. 671, 500 S.E.2d 86 (1998). Here, the loss of grip because of the suboptimal thumb fusion is a substantial change in plaintiff's physical capacity to earn wages, occurring after the 10% award was paid, different from that existing when the award was made.
2. Plaintiff is entitled to compensation at the rate of $322.55 per week for each week after April 18, 2001 that he has been unable to earn wages because of his compensable injury. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to 30 weeks of compensation at the rate of $322.55 per week for the increase in rating to his thumb from the 10% previously awarded and paid to the 50% rating determined by this Opinion and Award, an increase of 40%. N.C. Gen. Stat. § 97-31(1).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereafter described, defendants shall pay to plaintiff $9,676.50 for the 30 weeks of compensation due for the increased rating to his thumb from 10% to 50%. Of this amount $7,257.38 shall be paid to plaintiff and $2,419.12 shall be paid directly to plaintiff's attorney. Defendants shall pay to plaintiff interest at the rate of 8% per year on the $9,676.60 from September 26, 2001 (the date of the hearing before the Deputy Commissioner) until the entire $9,676.60 is paid.
2. Subject to attorney fees hereafter described, defendants shall pay to plaintiff $322.55 per week from April 18, 2001 until the plaintiff is able to find a job and returns to work at wages equal to or greater than $545.30 per week or until further order of the Industrial Commission. Compensation due to the date of this opinion and award shall be paid in a lump sum, 75% thereof to plaintiff and 25% thereof directly to plaintiff's counsel. Thereafter, defendants shall pay weekly compensation to plaintiff with every fourth check being paid to plaintiff's attorney. Of the amount due by September 26, 2001, defendants shall pay interest thereon at the rate of 8 percent per year until paid. The amounts due after September 26. 2001 shall bear interest from the date due until the date paid.
3. Defendants shall pay, or reimburse those who paid, all medical providers for service rendered to plaintiff by reason of his compensable injuries to the extent those services tended to provide relief, to effect a cure or to help to return him to gainful employment. This requirement shall extend into the future so long as plaintiff continues to require medical service or prescription drugs for his injury to tend to effect a cure or provide relief.
4. Defendants shall pay the costs.
This 5th day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________ BUCK LATTMORE CHAIRMAN