***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Travelers Insurance Company was the workers' compensation carrier on risk for defendant-employer at all relevant times.
4. Plaintiff's average weekly wage at the time of the injury was $606.75 per week.
 ***********
Based on the foregoing stipulations and the evidence the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-seven years of age. She completed school through the seventh grade and at age forty, received a GED. At age sixteen, plaintiff began working in textiles doing winding and spinning. She worked for defendant-employer and its predecessors for approximately twenty-four years.
2. In 2000, plaintiff received a workers' compensation award of $40,000.00 for lung damage due to exposure to cotton dust while working for defendant-employer Galey Lord Industries, Inc. Plaintiff testified that defendant-employer told her that if she could not pass the next breathing test, she would be terminated. Plaintiff had not passed the breathing test in eight to ten years. She then began looking for other work and never took the pulmonary function test.
3. After leaving defendant-employer, plaintiff worked for Freightliner as a truck assembler, beginning on 26 October 1998. Her duties there included assembling the cab of a truck by drilling holes for rivets. Plaintiff used air drills, which were not heavy. However, her toolbox weighed approximately twenty pounds. Plaintiff had an accident where she was hit by a cab door in her right shoulder on 5 January 1999. After that accident, she did light-duty work cleaning truck cabs.
4. Freightliner laid plaintiff off in October 2000.
5. Plaintiff found jobs at Wix and Sara Lee/Bali, but was unable to continue working there due to work restrictions from her right shoulder injury. She found work at Kmart as a sales associate on 18 May 2001. Her duties included waiting on customers and straightening the store before going home. Plaintiff testified that this job did not involve heavy lifting, but plaintiff would find herself very tired with tightness and soreness in her chest. One morning, plaintiff called in to her manager and told him that she was quitting due to her health. When plaintiff went to pick up her last check, she testified that her record noted that she had quit without notice. Plaintiff's last day at work was 5 February 2002. She testified that she has not looked for any work after leaving Kmart.
6. Plaintiff is currently seeking compensation from defendant-employer Galey Lord Industries, Inc. for change of condition relating to her compensable lung damage claim. Plaintiff's previous claim was found compensable. She was paid $40,000.00 for damage to her lungs; the last payment of compensation was in 2001. On 12 February 2002, plaintiff filed a Form 33 Request For Hearing on the grounds that she had suffered a change of condition. Her claim was timely filed.
7. Belinda Negrete, the human resources manager for Kmart who hired plaintiff, testified that plaintiff never told her about breathing problems and did not appear to have breathing problems on 18 May 2001. Ms. Negrete described plaintiff as "very energetic, very, very conscientious," upbeat and cheerful. Ms. Negrete also testified that she wished she had more employees like plaintiff. Plaintiff was promoted within a short period of time to hosiery manager on 27 December 2001. Ms. Negrete testified that plaintiff frequently asked about overtime availability. Ms. Negrete further testified that plaintiff never asked about light-duty positions. Ms. Negrete had several positions in the building that could have accommodated a light-duty worker.
8. On the day that plaintiff quit working for Kmart, Ms. Negrete testified that plaintiff told her that her attorney had advised her to quit working. Plaintiff never stated that her decision to stop working was in any way related to her inability to perform her job.
9. Plaintiff testified that her health has deteriorated such that she cannot do housework without stopping and resting every fifteen to twenty minutes. She also testified that she had no secretarial skills and has never done sedentary work. She further testified that she suffers from depression because she is unable to work.
10. Plaintiff is a lifelong smoker. In her early years, she smoked a pack and one-half per day. When she worked for defendant-employer, plaintiff smoked three to four cigarettes per day. At the time of the hearing, plaintiff smoked two cigarettes per day.
11. Ms. Negrete testified that, on several occasions, she observed plaintiff taking smoke breaks with other employees. Loretta Cox, a Kmart associate, testified that she smoked with plaintiff once per day, three times per week and that plaintiff would smoke at least three cigarettes in fifteen minutes. Mary Green, another Kmart associate, testified that she frequently observed plaintiff smoking in her car during her breaks.
12. Dr. Cooper testified that plaintiff's continued cigarette smoking has a deleterious effect on her pulmonary function and increased her COPD by increasing symptoms such as wheezing, shortness of breath, sputum production and fatigue. Dr. Cooper testified that plaintiff has continuously requested help for her smoking addiction.
13. Dr. James B. Jones testified that plaintiff's results from a pulmonary function test taken on 30 April 2002 were not significantly different from one performed in 1998.
14. Therefore, the medical evidence does not establish a substantial change of her medical condition.
15. The evidence in the record does not show that plaintiff is incapable of working due to her pulmonary condition.
16. Plaintiff underwent right shoulder surgery on 20 August 2001, performed by Dr. Patrick Conner. Dr. Conner released plaintiff to return to work in December 2001 without restrictions and assigned her right shoulder a 22% permanent impairment rating. Plaintiff testified that the surgery resolved her right shoulder symptoms. At the time of the hearing, plaintiff had a workers' compensation claim against Freightliner pending.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission may review any award on the grounds of a change in condition by ending, diminishing, or increasing the compensation previously awarded. N.C. Gen. Stat. § 97-47 (2003). In the instant case, plaintiff received a workers' compensation award of $40,000.00 in 2000 for lung damage due to exposure to cotton dust while working for defendant-employer Galey Lord Industries.
2. For purposes of N.C. Gen. Stat. § 97-47, a change of condition is a substantial change in physical capacity to earn wages, occurring after a final award of compensation that is different from that existing when the award was made. Bailey v. Sears Roebuck Co.,131 N.C. App. 649, 654, 508 S.E.2d 831, 835 (1998). When the previous award was made, the deputy commissioner found that plaintiff retained the capacity to earn the wages that she was earning at the time she contracted COPD.
3. "In order to recover for a change of condition, a plaintiff is required to prove that the change in condition is a natural consequence of the original injury." Moore v. Federal Express, ___ N.C. App. ___,590 S.E.2d 461 (2004); Blair v. American Television CommunicationsCorp., 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996). In addition, the party seeking to modify an award under N.C. Gen. Stat. § 97-47
bears the burden of proving by a greater weight of the evidence that a new condition exists and that it is causally related to the injury upon which the award is based. Cummings v. Burroughs Wellcome Co.,130 N.C. App. 88, 91, 502 S.E.2d 26, 29, disc. rev. denied, 349 N.C. 355,517 S.E.2d 890 (1998). "A claimant satisfies this burden by producing medical evidence establishing a link between the new condition and the prior compensable injury in terms of reasonable medical probability. Id.
4. The medical testimony here indicates that there is no substantial change in plaintiff's condition. The minimal change in plaintiff's condition, if any, is due to her continued smoking against the advice of her physicians. Plaintiff's supervisor and co-workers testified that plaintiff was very capable at her job with Kmart. Plaintiff has failed to prove by the greater weight of the evidence that she quit her job at Kmart because of an incapacity to work. See Chisholm v. Diamond CondominiumConstr. Co., 83 N.C. App. 14, 19, 348 S.E.2d 596, 600 (1986).
5. Because plaintiff has failed to show a substantial change in her condition and has failed to show that any minimal change in her condition is a natural consequence of the original injury, her claim for additional benefits should be denied. N.C. Gen. Stat. § 97-47.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is, denied.
2. Each side shall bear its own costs.
This the ___ day of March 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER