***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and are subject to and bound by the provisions of the Workers' Compensation Act; the Commission has jurisdiction over the parties and the subject matter; an employer-employee relationship existed between plaintiff and employer; and American Home Assurance was the carrier on the risk through April 1, 2002.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. The parties stipulated into evidence Industrial Commission Forms 18, 19, 21, 22, 33 and 33R.
4. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
 ***********
Based upon all the competent evidence of record, the undersigned make the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 63 years old. Plaintiff received a high school diploma but testing indicated that he reads at a fifth grade level. Plaintiff worked as a furniture assembler for defendant-employer, assembling furniture, which weighed up to 100 pounds.
2. On August 8, 2000, plaintiff suffered a compensable injury by accident when his left middle finger was injured while operating a machine in the course of his employment. His claim was accepted but he did not miss any work as a result of the injury.
2. On January 29, 2001, plaintiff presented to Dr. Christopher Lechner, an orthopedic surgeon, who performed a Ray amputation of the middle finger of his left hand. This procedure involved amputation of the finger and removal of a metacarpal in the palm, essentially rearranging the fingers. On July 19, 2001, Dr. Lechner found that plaintiff had reached maximum medical improvement. At that time, plaintiff could bring his fingertips to his palm. Dr. Lechner gave a permanent partial impairment rating of 20% to the left hand and released plaintiff to return to work with no restrictions.
3. On October 11, 2001, the Industrial Commission approved a Form 21, Agreement for Compensation, based on Dr. Lechner's 20% rating to the hand. The Agreement paid plaintiff for his compensable August 8, 2000, injury to his left middle finger at the rate of $422.68 for 40 weeks, based upon an average weekly wage of $633.98.
4. When plaintiff returned to his job as a furniture assembler, he had difficulty in performing the work because of the lack of grip in his left hand. Plaintiff also had difficulty in using a sander on the furniture. Plaintiff became unable to grasp sufficiently with his left hand and began lifting objects with the heel of his left hand while grasping them with his right hand. The problems began approximately six months after being released from Dr. Lechner's care and after the approval of the Form 21.
5. Plaintiff's discomfort increased with his activity and heavy lifting. The discomfort became chronic and led plaintiff to seek help from the company nurse.
6. On January 15, 2003, plaintiff presented to Dr. Steven B. Sanford, a surgeon at the Carolina Hand Center. Dr. Sanford noted that plaintiff was having difficulty with numbness and tingling in his left hand and catching and locking activities with the index and small fingers. Dr. Sanford opined that plaintiff had left carpal tunnel syndrome and triggering of the left index and small fingers.
7. On March 4, 2003, plaintiff presented to Dr. Andrea Stutesman, a physical medicine and rehabilitation specialist. Dr. Stutesman recommended a nerve conduction study and an arteriogram. After review of those studies, Dr. Stutesman diagnosed plaintiff with ulnar neuropathy, tenosynovitis of the left index, ring and little fingers, neuroma and hypothenar hammer syndrome. Dr. Stutesman was of the opinion that these conditions of plaintiff's left hand were caused by the Ray amputation and residual weakness, which led plaintiff to abnormally use the hypothenar eminence of his left hand.
8. On June 5, 2003, Dr. Stutesman recommended that plaintiff be seen by a hand surgeon for an evaluation of possible release of ulnar nerve entrapment and tenosynovitis to the left hand. Dr. Stutesman opined that physical therapy of the left hand would make it stronger and thereby alleviate his discomfort.
9. On September 10, 2003, plaintiff returned to Dr. Christopher Lechner. Dr. Lechner was of the opinion that plaintiff had undergone a change in his condition. Dr. Lechner gave permanent work restrictions of not lifting more than five pounds, no repetitious or vibratory work, and no work in a cold environment. Plaintiff communicated these restrictions to his employer. The work assigned to plaintiff continued to exceed the lifting restriction of five pounds.
10. At the hearing before the Deputy Commissioner, plaintiff, his supervisor and a co-worker testified that the work which plaintiff is regularly required to perform with defendant-employer frequently exceeds his work restrictions.
11. When Dr. Lechner examined plaintiff on September 10, 2003, plaintiff could not bring his ring finger to his palm. When Dr. Lechner had previously examined plaintiff on June 7, 2001, plaintiff was able to bring all of his fingertips to his palm. At the hearing before the Deputy Commissioner on April 5, 2004, plaintiff could only bring his ring finger and little finger perpendicular to his palm and could only grip with the thumb and trigger finger.
12. On February 10, 2004, Randy Adams, a certified vocational expert, performed a vocational evaluation of plaintiff and concluded that the job plaintiff was performing for defendant-employer was not one that would normally be found in the economy. He opined that given plaintiff's age, academic abilities and physical impairments, he would not be able to perform any work in the local or state economy.
13. On March 31, 2004, plaintiff again presented to Dr. Andrea Stutesman, who ordered a nerve conduction study of the right hand, which showed moderate carpal tunnel syndrome. Dr. Stutesman opined that the carpal tunnel syndrome of the right hand was caused by overuse due to the inability to use the left hand. Dr. Stutesman recommended that a hand surgeon evaluate plaintiff for a carpal tunnel release of the right hand.
14. The competent evidence of record establishes and the Full Commission finds that as of March 31, 2004, plaintiff developed right-sided carpal tunnel syndrome as a direct and natural consequence of his compensable injury to his left hand, the change of condition of his left hand and the resulting overuse of his right hand.
15. The Full Commission finds that plaintiff sustained a substantial change of condition since the time of the approval of the Form 21 on October 11, 2001, in that as of September 10, 2003, plaintiff's condition had deteriorated to the point that Dr. Lechner assigned plaintiff lifting restrictions of no more than five pounds, no repetitious or vibratory work and no work in cold environments.
16. The Full Commission further finds that plaintiff is unable to find suitable employment due to his age, physical limitations and academic abilities and consequently is unable to earn wages in the same or other employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. For purposes of N.C. Gen. Stat. § 97-47, a change of condition is a substantial change in physical capacity to earn wages, occurring after a final award of compensation that is different from that existing when the award was made. Bailey v. Sears Roebuck Co., 131 N.C. App. 649, 654,508 S.E.2d 831, 835 (1998). The plaintiff sustained a change of condition since the time of the approval of the Industrial Commission Form 21 on October 10, 2001. N.C. Gen. Stat. § 97-47.
2. The plaintiff remains disabled and is entitled to workers' compensation benefits at the rate of $422.68 per week commencing September 10, 2003, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. The plaintiff is entitled to have the defendants pay for all medical expenses incurred, or to be incurred, as a result of the plaintiff's admittedly compensable injury by accident on August 8, 2000, and plaintiff's change of condition as of September 10, 2003, which tend to effect a cure, give relief and/or lessen the plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25 and 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay total disability compensation benefits to plaintiff at the rate of $422.68 per week continuing until further Order of the Industrial Commission. All compensation that has accrued shall be paid in one lump sum, also subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident on August 8, 2000, and plaintiff's change of condition as of September 10, 2003, which tend to effect a cure, give relief and/or lessen the plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Twenty-five percent (25%) of the lump sum amount due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay to plaintiff's counsel every fourth check due the plaintiff.
4. Defendants shall pay the costs.
This the ___ day of October 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER