***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of the injury by accident is November 7, 2005.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties. Key Risk Insurance Company was the carrier on the risk.
5. Defendants accepted the claim of injury to the low back on an Industrial Commission Form 60 Employer's Admission of Employee'sRight to Compensation dated November 14, 2005, and paid indemnity and medical benefits until the Industrial Commission approved a Form 24 Application to Suspend Benefits on June 8, 2006.
6. Plaintiff's average weekly wage is $556.40, resulting in a compensation rate of $370.95.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement; and
 • Exhibit 2: Industrial Commission Forms and Filings.
In addition, Plaintiff's Exhibit 1, a July 12, 2006 letter from defendant-employer, was received into evidence.
8. Plaintiff's medical records were to have been submitted by the parties post-hearing as Stipulated Exhibit 3, but were not submitted. Therefore, the Commission relied on *Page 3 
plaintiff's medical records submitted for the April 21, 2007 hearing before former Deputy Commissioner John Deluca, and the deposition testimony submitted for the August 17, 2009 hearing before Deputy Commissioner Homick.
9. Plaintiff's issues for determination by the Commission are as follows:
 a. Is plaintiff entitled to additional temporary total disability benefits;
 b. Is plaintiff permanently and totally disabled;
 c. Is plaintiff entitled to a permanent partial impairment;
 d. Is plaintiff entitled to additional medical compensation;
 e. Has plaintiff experienced a change of condition;
 f. Is plaintiff entitled to an order allowing Dr. Theodore Nicholas to be her treating physician;
 g. Is plaintiff entitled to attorney's fees as provided by N.C. Gen. Stat. § 97-88.1.
10. Defendants' issues for determination by the Commission are as follows:
 a. Whether plaintiff is barred from requesting additional indemnity and medical compensation based on the treatment and recommendations of unauthorized physicians and from requesting authorization of treatment by Dr. Theodore Nicholas due to Deputy Commissioner Deluca's Opinion and Award of April 21, 2007, from which plaintiff did not appeal, and the doctrines of equitable estoppel and res judicata;
 b. Whether plaintiff has established a change of condition as defined by N.C. Gen. Stat. § 97-47 and applicable case law; *Page 4 
 c. Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act other than those already received;
 d. Whether plaintiff is barred from seeking additional medical treatment due to the time limitations set forth in N.C. Gen. Stat. § 97-25.1;
 e. Whether defendants are entitled to a credit in the amount of all long-term disability benefits plaintiff has received pursuant to N.C. Gen. Stat. § 97-42.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years of age. Plaintiff is a high school graduate and received an associate's degree in business. Plaintiff began working for defendant-employer in 1993 and worked as a client services coordinator. Her job duties included preparing reports, data entry and other computer-type work.
2. Plaintiff had a prior lower back injury that was not work-related, which necessitated lower back surgery at L5-S1 in 2001. An MRI performed on February 17, 2005, revealed a "mild broad base disc bulge and a mild hyper-intense signal within the posterior disc that may represent annular tear."
3. On November 7, 2005, plaintiff sustained a compensable injury by accident to her lower back, while bending over rearranging a box. Plaintiff experienced the onset of right-sided lower back pain. *Page 5 
4. On November 14, 2005, defendants admitted the compensability of plaintiff's claim by filing a Form 60 Employers' Admission ofEmployee's Right to Compensation dated November 14, 2005.
5. On the date of the work-related accident, plaintiff presented to Dr. S. Michael Sutton at Albemarle Family Practice with complaints of right hip pain that radiated into her right leg. Plaintiff was diagnosed with a back strain with right radicular symptoms. On November 25, 2005, an MRI was performed and, when compared to plaintiff's February 17, 2005 MRI, it revealed a possible annular tear at L5-S1, but no significant change in the mild bilateral neural foraminal narrowing at L5-S1.
6. On December 12, 2005, plaintiff presented to Dr. David Clifford, an orthopedic specialist. Dr. Clifford reviewed plaintiff's MRI, but was unable to substantiate an annular tear upon his review of the MRI. Dr. Clifford referred plaintiff for physical therapy and opined that she was not a surgical candidate. Dr. Clifford diagnosed L5-S1 degenerative disc disease with an S1 radiculopathy on the left. Plaintiff continued to present to Dr. Clifford for epidural steroid injections and other conservative treatment.
7. Another MRI was performed on January 17, 2006, which, when compared to the MRI on November 25, 2005, revealed no significant change in mild bilateral neural foraminal narrowing at L5-S1.
8. An EMG Nerve Conduction Study performed on February 1, 2006, was mildly abnormal, revealing decreased amplitude on the left that was compatible with a history of S1 nerve compression or injury. *Page 6 
9. On February 23, 2006, plaintiff presented to Dr. Robert Spear, a physiatrist and pain management specialist, who opined that plaintiff's problems were related to her sacroiliac joint and recommended an epidural steroid injection.
10. Dr. Spear ordered a functional capacity evaluation (FCE), the results of which revealed that plaintiff was capable of functioning at a light/borderline light to medium physical demand level.
11. There was no evidence to indicate that plaintiff's job as a client services coordinator entailed lifting in excess of 20 pounds, prolonged bending or twisting or any activity outside the guidelines of the FCE.
12. On April 10, 2006, plaintiff presented to Dr. Spear for review of the FCE results. Dr. Spear released plaintiff to return to work as of April 11, 2006, pursuant to the FCE guidelines. Dr. Spear opined that he had no reason to believe that plaintiff sustained any injury other than sacroiliitis as a result of her work injury and that this condition had totally resolved by the time he last evaluated her on April 10, 2006.
13. Plaintiff never attempted to return to work for defendant-employer after being released to do so by Dr. Spear. Dr. Spear opined that plaintiff was functionally capable of returning to work in the client services coordinator position, had reached maximum medical improvement, and there was no diagnosis that would warrant the use of long-acting opioid medications such as Oxycodone or Methadone, which plaintiff had been taking. Dr. Spear testified that plaintiff could return to him for treatment if she were to have ongoing symptoms.
14. Without defendants' knowledge or authorization, plaintiff thereafter sought treatment from unauthorized physicians, including Dr. Theodore Nicholas, a physiatrist. *Page 7 
Plaintiff neither filed a motion for a change of treating physician nor sought the Industrial Commission's approval for treatment with these health care providers prior to October 2006.
15. Another MRI was performed on May 1, 2006, which revealed that there was near complete resolution of the fluid previously seen within the L5-S1 intervertebral disc, with the remainder of the study otherwise negative and unchanged.
16. In June 2006, Dr. Nicholas ordered new nerve conduction studies, which revealed no evidence of acute lumbosacral radiculopathy, mononeuropathy, underlying peripheral polyneuropathy, myopathy, or neuromuscular disease.
17. From 2006 to 2009 Dr. Nicholas continued to treat plaintiff with pain medication and muscle relaxants, including Oxycodone, Celebrex, Oxycontin and Methadone.
18. Dr. Nicholas opined to a reasonable degree of medical certainty that plaintiff's November 7, 2005 work injury exacerbated her pre-existing condition and that as of July 2006, plaintiff was unemployable and permanently and totally disabled.
19. To the extent that Dr. Nicholas opined that plaintiff is unemployable and permanently and totally disabled, his opinion is given less weight than that of plaintiff's authorized treating physician, Dr. Spear, who opined that plaintiff is capable of returning to work and could have returned to her job as a client services coordinator as of 2006.
20. The Full Commission finds that Dr. Spear, plaintiff's authorized treating physician, as a result of his training and experience, as well as his treatment of plaintiff, was in the best position to address plaintiff's medical condition and the extent of her disability. Accordingly, the Full Commission assigns greater weight to the opinions provided by Dr. Spear over those of Dr. Nicholas. *Page 8 
21. On March 21, 2006, defendants filed a Form 24 Application toStop or Suspend Payment of Compensation, which was approved by the Executive Secretary's Office on June 8, 2006, permitting defendants to suspend payment of temporary total disability compensation on March 21, 2006.
22. Thereafter, plaintiff filed a Form 33 Request That Claim BeAssigned for Hearing dated July 3, 2006. A hearing was held before Deputy Commissioner Deluca and on April 21, 2007, an Opinion and Award was filed in which, inter alia, the Deputy Commissioner awarded medical treatment from plaintiff's authorized treating physicians but denied plaintiff's claim for additional indemnity compensation and medical compensation from unauthorized physicians. The Deputy Commissioner determined that plaintiff's job as a client services coordinator was sedentary and suitable to plaintiff's capacity. No appeal was taken from this decision.
23. Despite the Industrial Commission's decision, plaintiff continued to present to Dr. Nicholas for chronic pain management and never returned to Dr. Spear, the authorized treating physician.
24. As Dr. Spear opined, the Full Commission finds that as of April 10, 2006, plaintiff was at maximum medical improvement, sustained no permanent impairment, and was capable of returning to her client services coordinator position.
25. On the issue of a change of condition, both before and after the April 21, 2007 Opinion and Award was filed, Dr. Spear opined that plaintiff was at maximum medical improvement, sustained no permanent impairment and was capable of returning to her client services coordinator position. To the contrary, Dr. Nicholas opined that in July 2006 plaintiff was incapable of working and remained so as of the date of his deposition on November 11, 2009. *Page 9 
26. Diagnostic testing performed after the April 21, 2007 Opinion and Award revealed no significant changes.
27. The Full Commission finds that plaintiff has failed to prove by the greater weight of the evidence that she experienced a change of condition. Therefore, plaintiff is not entitled to additional temporary total disability compensation. The lay and medical evidence indicates that plaintiff's condition remained generally stable with periodic complaints of increased pain. Any medical evidence supporting a worsening of plaintiff's condition is merely demonstrative of a difference of medical opinion rather than evidence of an actual substantial change of condition.
28. The issue of whether plaintiff should be allowed to treat with Dr. Nicholas is the same issue decided by Deputy Commissioner Deluca on April 21, 2007, when treatment with Dr. Nicholas and other unauthorized physicians was denied. Accordingly, the Full Commission finds that the doctrine of collateral estoppel or resjudicata precludes the parties from retrying this issue addressed in the prior determination.
29. Plaintiff testified that her depression and anxiety were significantly aggravated by her back injury and related pain. However, there was insufficient medical evidence of record to causally relate these conditions to the compensable injury by accident.
30. Defendants' defense of this claim was not based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. On November 7, 2005, plaintiff sustained an admittedly compensable low back injury by specific traumatic incident of the work assigned arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In an Opinion and Award filed on April 21, 2007, Deputy Commissioner Deluca denied plaintiff's claim for additional indemnity and medical compensation from unauthorized treating physicians, including Dr. Theodore Nicholas. Pursuant to N.C. Gen. Stat. § 97-85, plaintiff had 15 days from the date when the notice of the Award was given in which to request review of the Opinion and Award. Plaintiff failed to file notice of appeal from the April 21, 2007 Opinion and Award and, as a result, the April 21, 2007 Opinion and Award is final.
3. The doctrine of collateral estoppel declares that "parties and parties in privity with them . . . are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." King v.Grindstaff, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973). The doctrine of collateral estoppel is a companion doctrine to resjudicata, which bars every ground of recovery or defense actually litigated or which could have been included in a previous action.Id.
4. "Under the doctrine of res judicata or claim preclusion, a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Whitacre P'ship v. Biosignia, Inc.,358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). The courts have held that this "law of estoppel applies in workers' compensation proceedings as in all other cases." Hughart v. Dasco Transp.,Inc., 167 N.C.App. 685, 691, 606 S.E.2d 379, 383-84 (2005). The essential elements of res judicata are: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present *Page 11 
suit, and; (3) an identity of parties or their privies in both suits. Bryant v. Weyerhaeuser Co.,130 N.C.App. 135, 138, 502 S.E.2d 58, 61, disc. rev. denied,349 N.C. 228, 515 S.E.2d 700 (1998).
5. Even assuming arguendo that equitable estoppel and resjudicata are not applicable here, factual and legal analysis would compel the same outcome. Plaintiff alleges a change of condition with respect to her compensable November 7, 2005 injury. The burden is on plaintiff to show that she sustained a change of condition by showing "a substantial change in physical capacity to earn wages, occurring after a final award of compensation, different from that existing when the award was made." Bailey v.Sears Roebuck Co.,131 N.C. App. 649, 654, 508 S.E.2d 831, 835 (1998).
6. Although plaintiff has complained of continued pain, the greater weight of the evidence of record fails to demonstrate that plaintiff sustained a substantial change of condition. Therefore, plaintiff is not entitled to further indemnity benefits. N.C. Gen. Stat. § 97-47; Bailey v. SearsRoebuck Co., supra.
7. Pursuant to Rule 408 of the Workers' Compensation Rules of the North Carolina Industrial Commission, an injured employee may make a claim for additional medical compensation either by using a Form 18M or by making a written request to the Industrial Commission. Plaintiff made a written request to the Industrial Commission for additional medical compensation pursuant to N.C. Gen. Stat. § 97-25.1 and Industrial Commission Rule 408 by filing her Form 33 Request That Claim Be Assigned For Hearing
dated July 3, 2006. The Form 33 indicated that the parties could not agree concerning plaintiff's need for additional medical compensation and temporary total disability benefits.
8. A Form 33 Request That Claim Be Assigned For Hearing filed with the Industrial Commission indicating plaintiff's need for additional medical treatment pursuant to N.C. Gen. Stat. § 97-25.1 *Page 12 
is sufficient to serve as a written request for additional medical compensation. Fontenot v. Ammons Springmoor Assocs.,176 N.C. App. 93, 625 S.E.2d 862 (2006). The filing of the Form
33 Request That Claim Be Assigned For Hearing on July 3, 2006 tolled the time limit contained in N.C. Gen. Stat. § 97-25.1
and therefore plaintiff's claim for further medical treatment is not barred.
9. As a direct and proximate result of plaintiff's compensable injury by accident on November 14, 2005, plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred for her back injury, including periodic visits with Dr. Spear and other authorized health care providers, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. However, defendants are not responsible for the payment of any unauthorized medical treatment provided by Dr. Nicholas and other unauthorized health care providers. N.C. Gen. Stat. §§ 97-2(19), 97-25.
10. Defendants' defense of this claim was not based upon stubborn, unfounded litigiousness and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical treatment reasonably necessary for plaintiff's injuries sustained in her work accident of November 14, 2005, including periodic visits with Dr. Spear and other authorized health care providers. *Page 13 
2. Plaintiff's claim for medical benefits from unauthorized physicians under the Workers' Compensation Act is hereby denied.
3. Under the law, plaintiff's claim for indemnity compensation must be and is hereby denied.
4. Defendants shall pay the costs due the Commission.
This 10th day of March, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1