***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS:
1. The parties are subject to and bound by the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer on February 5, 2000;
3. Defendant is self-insured.
4. The parties have stipulated that plaintiff's average weekly wage is $622.89.
5. The employee sustained an injury to his low back, a lumbar strain, on or about February 5, 2000.
6. The employee's lower back lumbar strain injury arose out of and in the course of employment and is compensable.
7. The parties stipulated into evidence documents including all of plaintiff's medical records (with the exception of records from the North Carolina Division of Mental Health), all Industrial Commission forms (including Form 18, Form 19, Form 33, Form 33R, Form 28, Form 28B and Form 60), Plaintiff's Responses to Defendants' First Set of Interrogatories and Request for Production of Documents, Defendants' Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents, plaintiff's job description and TAD program descriptions, plaintiff's payroll information, plaintiff's functional capacity evaluation, and printout of payments made by the carrier to plaintiff.
8. The depositions of Janis Pinion, Dr. Anna P. Bettendorf, Dr. Angelo Tellis, Dr. Cynthia Lopez and Dr. Alfred DeMaria were submitted and received into the evidence of record.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for Food Lion as an assistant store manager. On February 5, 2000, plaintiff was breaking down a display when he twisted his back picking up a box of juice. Defendants submitted a Form 60 accepting this claim as compensable.
2. Plaintiff first sought treatment for his back pain at the Carteret General Hospital Emergency Room the day after the incident, February 6, 2000. Plaintiff was diagnosed with a back strain and written out of work for two days with a light-duty return to work anticipated for a period of eight to ten days thereafter.
3. On February 8, 2000, plaintiff saw Dr. McCabe for complaints of back pain and a new rash, which Dr. McCabe diagnosed as herpes zoster (also known as shingles).
4. On February 14, 2000, Dr. McCabe diagnosed plaintiff with two separate conditions: 1) low back pain, and (2) herpes zoster and released plaintiff to return to work with a five pound lifting restriction.
5. An MRI of plaintiff's lumbar spine on February 22, 2000, revealed no disc abnormalities.
6. By February 25, 2000, Dr. McCabe's notes indicate plaintiff's back pain was significantly better, but plaintiff still had a right inguinal rash from the herpes zoster condition, and Dr. McCabe anticipated a full-duty release to work within three weeks.
7. On March 14, 2000 when plaintiff continued to complain of back and leg pain, he asked for a referral to a neurologist. Dr. McCabe continued to diagnose plaintiff with a mild low back strain, right inguinal herpes zoster, and on March 14, 2000 added an additional diagnosis of ultra-sensation to the right anterior thigh, more likely related to post herpetic neuralgia.
8. On March 21, 2000, plaintiff began treating with Dr. Cynthia Lopez at the Raab Neurology Clinic upon referral by Dr. McCabe. Dr. Lopez is a board certified expert in the field of neurology and nerve conduction studies. Dr. Lopez was treating plaintiff for two separate conditions, back pain and shingles. Dr. Lopez performed nerve conduction studies, which revealed no evidence of radiculopathy, no evidence of diffuse peripheral neuropathy and no evidence to suggest that the right thigh numbness was caused by a radicular process in plaintiff's back.
9. Dr. Lopez testified that she could not give an opinion to any reasonable degree of medical certainty that physical stress or injury could even possibly trigger the dormant shingles virus, and that to do so would be nothing more than mere speculation. Dr. Lopez further testified she was unaware of any empirical or scientific evidence to show correlation between the back strain and shingles outbreak.
10. Dr. Lopez, who is board certified in neurology, stated that plaintiff's shingles and post-herpetic neuralgia were separate conditions from his back pain/lifting injury.
11. After reviewing a functional capacity evaluation in June of 2000, Dr. Lopez opined that plaintiff could return to work in a light/medium category.
12. Plaintiff treated with Dr. Angelo Tellis, who is board certified in physical medicine and rehabilitation, from July 19, 2000 through November 8, 2000. Dr. Tellis diagnosed plaintiff with myofascial pain and ordered a course of physical therapy and released plaintiff to return to light-duty work.
13. Dr. Tellis found that plaintiff suffered from lateral femoral cutaneous neuropathy which is "classically found in obese patients" and which he believed accounted for plaintiff's neurologic pain complaints. Dr. Tellis did not, however, treat plaintiff for the mononeuropathy, but instead treated plaintiff for his back strain. In October of 2000, Dr. Tellis ordered an updated MRI of plaintiff's lumbar spine, which was normal.
14. Dr. Tellis released plaintiff from his care on November 8, 2000, at which time he opined that plaintiff had reached maximum medical improvement with regard to his back injury and that he retained a zero percent (0%) permanent partial disability rating to his back from the lifting injury.
15. Dr. Tellis saw no reason plaintiff could not have resumed normal work activities at that time and also questioned the validity of the previous functional capacity evaluation, as plaintiff had invalid responses in three out of five categories, demonstrating inappropriate illness behavior.
16. After being released by Dr. Tellis, plaintiff underwent a second opinion evaluation with Dr. Anna Bettendorf, a board certified physician in both physical medicine and rehabilitation and electrodiagnostic studies at Duke Hospital, on January 9, 2001. Dr. Bettendorf saw no evidence of any significant injury having taken place to plaintiff's back and no evidence of spinal or functional impairment. Dr. Bettendorf concluded that plaintiff had no permanent impairment and that he should resume normal daily activities, including work as an assistant store manager.
17. Dr. Bettendorf opined that plaintiff's shingles condition was a separate problem that was not caused by his lifting incident resulting in plaintiff's back strain. She testified that there is no medical literature linking shingles to a back strain and that a lumbar strain would not cause a shingles flare-up. On February 12, 2001, plaintiff sought unauthorized treatment on his own with Dr. Suh at the North Carolina Spine Center in Chapel Hill, North Carolina. Dr. Suh performed a physical exam and the test results appeared to be consistent with those performed by Dr. Bettendorf, which were all within normal limits.
18. Dr. Suh diagnosed plaintiff with "lumbar degenerative disc disease" and recommended plaintiff undergo a thoracolombar diskogram, which was performed on February 20, 2001, and was normal.
20. Dr. Suh's medical notes do not contain any opinions that plaintiff's back pain or lumbar disc degenerative disease diagnosis were causally related to the February 5, 2000 lifting incident at work.
21. In April of 2001, plaintiff again returned to Dr. McCabe. Plaintiff asked for surgical referral, which Dr. McCabe references in his medical note of July 23, 2001. Dr. McCabe states that both Dr. Davidson, a neurosurgeon, and Dr. Kaplowitz, a neurosurgeon, found plaintiff had no surgical problem and diagnosed him with "muscular back pain". Dr. Davidson's medical note of July 9, 2001, confirms that he could not medically explain plaintiff's current complaint, and that he did not feel that plaintiff needed further treatment with him.
22. Plaintiff continued to periodically treat with Dr. McCabe through 2001 and into 2002. On January 10, 2002, Dr. McCabe indicated that he is unsure why plaintiff's chronic pain continues. Dr. McCabe diagnosed plaintiff with chronic right leg pain, secondary to a multitude of factors, including post herpetic neuralgia and possible neuropathy. Dr. McCabe's notes do not contain any opinions that plaintiff's pain complaints are causally related to the February 5, 2000 compensable low back strain. Dr. McCabe also did not place any work restrictions on plaintiff.
23. During his treatment with the various physicians, plaintiff returned to work with Food Lion on several occasions. He returned to work on February 20, 2000 at the New Bern Food Lion and on July 25, 2000 at a different store location closer to his home in Newport so that he would not have to travel as far to work. Finally, plaintiff returned to his pre-injury job at the same wages on March 19, 2001.
24. On March 19, 2001, plaintiff returned to work for only three to five hours. Before leaving work on March 19, 2001 and never returning, plaintiff did not specify a single aspect of the job he could not perform or that caused him pain. Plaintiff did not seek modification for any part of his job.
25. Food Lion's policy is to make reasonable work accommodations whenever possible and plaintiff's job as an assistant store manager could have been altered to accommodate restrictions such as those ultimately given by his unauthorized physician, Dr. Suh.
26. While plaintiff never came back to Food Lion seeking work, Ms. Pinion confirmed that had plaintiff presented the graduated light-duty to full-duty schedule received by Dr. Suh beginning on March 27, 2001, the recommendations could have been accommodated.
27. After March 19, 2001, plaintiff requested a one year leave of absence. Plaintiff did not return to work following the end of his one year leave of absence in March of 2002.
28. Due to the fact that plaintiff was a salaried employee, he qualified for certain payroll benefits through Food Lion. When a salaried employee suffers a workers' compensation injury, payroll pays an additional one-third of their salary for twenty-six weeks in order to compensate for the temporary total disability benefits that are normally paid at two-thirds of the plaintiff's salary, subject to a maximum rate set annually.
29. There is no competent medical evidence of record showing that plaintiff's shingles was caused by, or is related to, his compensable back strain. The totality of the medical evidence shows that there is no known causal link between a back strain and the development of shingles. There is also no medical evidence that plaintiff's back strain caused him to develop a stress condition or that plaintiff suffered from stress related shingles.
30. There is no competent evidence that defendant knowingly paid for plaintiff's shingles treatment or ever led plaintiff to believe he had a compensable shingles claim. The only accepted injury in this matter was plaintiff's low back strain of February 5, 2000, which resolved in or around November 2000.
31. Plaintiff has remained capable of working in his job as an assistant store manager since November 8, 2000.
32. Plaintiff retains no permanent partial impairment as a result of his compensable February 5, 2000 low back strain.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants admitted liability on a Form 60 due to plaintiff sustaining a compensable low back strain from lifting a box of juice at work on February 5, 2000. N.C. Gen. Stat. § 97-2(6).
2. A "mere possibility" and "mere speculation" is not enough for plaintiff to meet his burden of proof on the issue of medical causation, Young v. Hickory Business Furniture, 353 N.C. 277,538 S.E.2d 912 (2000). None of the testifying physicians in this matter gave an opinion as to the cause of plaintiff's shingles or opined that it was in any way related to plaintiff's February 5, 2000 back strain. In fact, all of the physicians who were deposed in this matter could not state that the shingles was related and further stated that it would be mere speculation to say that a back strain could trigger an outbreak of shingles.
3. Plaintiff has failed to prove that his shingles condition was casually related to his back strain injury of February 5, 2000. The competent medical and other competent evidence of record establishes that Plaintiff's shingles was not related to or caused by Plaintiff's back strain injury. N.C. Gen. Stat. §97-2(6).
4. In order to sustain a compensable change of condition, plaintiff must prove that there has been an actual and substantial change and that the change stems from the original injury. Bailey v. Sears, Roebuck Co. 131 N.C. App. 649,508 S.E.2d 831 (1981). The burden of proof is on plaintiff to prove the existence of a new condition that is causally related to the injury, Blair v. American Television, 124 N.C. App. 420,477 S.E.2d 190 (1996); N.C. Gen. Stat. § 97-47. The competent medical evidence and other evidence of record fails to establish a compensable change of condition related to his February 5, 2000 back strain injury.
5. In order to support an award of temporary total wage loss benefits, plaintiff must prove that he is incapable, because of his injury, of earning his pre-injury wages. In this case, the evidence of record does not support plaintiff's claim. Plaintiff was at maximum medical improvement as of November 8, 2000 when he reached maximum medical improvement and was released by Dr. Tellis with a 0% impairment rating. Plaintiff was released as he was able to work full duty with no restrictions. Plaintiff unjustifiably refused suitable employment when he walked off the job on March 19, 2001 without any medical advice not to work and when plaintiff failed to specify any part of the assistant manager position he could not perform. N.C. Gen. Stat. §§ 97-29,97-32.
6. Plaintiff was out of work from February 5, 2000 through February 28, 2000, from April 1, 2000 until July 24, 2000, and then from August 1, 2000 until March 19, 2001. Plaintiff received either full pay or workers' compensation benefits during the times he was out of work. Plaintiff also received $200.00 per week for fifty-eight weeks over and above his temporary total disability payments and received over four months in temporary total disability benefits after he reached MMI and was released to full duty work. Accordingly, plaintiff is not entitled to recover for a minimal underpayment that occurred due to an error in the average weekly wage calculation. N.C. Gen. Stat. §97-2(5).
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD:
1. Plaintiff's claim for further benefits for his back stain of February 5, 2000 is hereby DENIED.
2. Plaintiff's claim for benefits for a shingles claim is hereby DENIED.
3. Each side shall bear its own costs of this action.
This the 6th day of May 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER