WYNN, Judge.
Defendant, New Hanover Regional Medical Center, appeals an Opinion and Award entered 12 September 2003 by the North Carolina Industrial Commission, awarding compensation to Plaintiff, Eleanor Spicer, for work-related carpal tunnel syndrome and chronic right upper extremity pain. After careful review, we affirm.
Ms. Spicer, an employee of the medical center, filed a workers' compensation claim alleging that on 25 June 1995 she injured her right arm while attempting to assist a 280-poundpatient to the bathroom. She alleged that the accident occurred when the patient fell and grabbed her, causing both to fall.
Following the fall, Ms. Spicer went to employee health services at the medical center with complaints of lower back and right shoulder pain. As a result, Ms. Spicer was written out of work until 29 June 1995, at which time she could return with temporary restrictions of lifting no more than fifteen pounds, no heavy pushing or pulling, no standing or sitting for long periods, no repetitive stooping, bending or squatting, and no patient lifting or transfers. She was also given pain medication and referred to Dr. James W. Markworth, an orthopedic surgeon with Southeastern Orthopedics.
Upon presenting herself to Dr. Markworth first on 19 July 1995, Ms. Spicer complained of pain throughout her right shoulder and some periodic pain and swelling of the right hand, paresthesias extending to all four fingers of the right hand, occasional inability to use the hand and arm on the right side and occasional radiation of pain from her back into her right thigh. Dr. Markworth ordered a MRI of Ms. Spicer's right shoulder, but it was not accurately completed due to her claustrophobia. An arthrogram was negative for a rotator cuff tear. On 24 April 1996, Dr. Markworth diagnosed Ms. Spicer with persistent shoulder and arm pain of an unknown etiology and assigned her a partial disability rating of two percent to her right-upper extremity based on her continuing pain. Dr. Markworth recommended that she do sedentary work. At this point, Ms. Spicer had been placed in various jobsincluding lab work, delivering blood, and passing out ice and lotions.
On 15 May 1996, Ms. Spicer returned to Dr. Markworth with complaints of continued swelling in the right hand and right shoulder. She noted that she had lifted a heavy package at work the previous day and felt this may have caused the swelling. No changes were made to her medications or work restrictions.
In June 1996, Ms. Spicer saw Dr. John C. Liguori, a physiatrist (physician specializing in physical medicine and rehabilitation). Dr. Liguori found no evidence that there was anything physically wrong with her and recommended no treatment or work restrictions.
On 20 August 1996, Dr. Markworth again examined Ms. Spicer, however, this examination revealed a positive Tinel's for carpal tunnel syndrome in the right wrist. He opined that Ms. Spicer's upper extremity pain may be secondary to the carpal tunnel syndrome.
In March 1997, the medical center offered Ms. Spicer the position of distribution clerk and she accepted. While the job of distribution clerk usually requires a person to lift all types of packages, due to Ms. Spicer's restrictions, the position was modified so that she only transported light-weight packages on a service cart. Ms. Spicer repeatedly delivered packages to the wrong locations, failed to secure necessary signatures, and was tardy to work. After a number of verbal and written warnings, the medical center terminated Ms. Spicer on 3 June 1997. Ms. Spicercontinued to have pain and was unable to keep a job for more than a few months.
On 3 April 1997, the Industrial Commission approved a Form 21 agreement for compensation for claim number 558162. In the Form 21 agreement, the medical center admitted liability and agreed to pay Ms. Spicer compensation for 4.8 weeks based upon a permanent partial disability rating of "2% to the arm, plus one week waiting period" pursuant to the rating Ms. Spicer received from Dr. Markworth.
On 12 June 1997, Ms. Spicer filed a Form 18 Notice of Accident to Employer, for claim number 721983, with the Industrial Commission alleging that the May 1996 lifting incident aggravated her condition. The medical center denied this claim.
Ms. Spicer requested a hearing for both claim numbers 558162 and 721983. In an Opinion and Award filed 13 December 2001, Deputy Commissioner Mary Moore Hoag denied Ms. Spicer's claim for temporary total disability and granted Ms. Spicer's claim for permanent partial disability of $638.98 and medical expenses. In an Opinion and Award filed 12 September 2003, the full Commission reversed the decision by Hoag and awarded Ms. Spicer benefits for total disability from 3 June 1997 through the present. The medical center appealed.
On appeal, the medical center argues that the full Commission erred in: (1) awarding Ms. Spicer temporary total and temporary partial disability; (2) finding that Ms. Spicer had sustained acompensable change in condition; and (3) finding that Ms. Spicer's original work-related injury caused carpal-tunnel syndrome in her right hand.
The standard of review for this Court in reviewing an appeal from the full Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review "'goes no further than to determine whether the record contains any evidence tending to support the finding.'" Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The full Commission's findings of fact "are conclusive on appeal when supported by competent evidence," even if there is evidence to support a contrary finding, Morrison v. Burlington Indus., 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" Young v. Hickory Bus. Furniture, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). Further, all evidence must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." Deese, 352 N.C. at 115, 530 S.E.2d at 553.
Here, the medical center has assigned error to the following paragraphs in the Opinion and Award:
Findings of Fact
***
14. In March 1997, Ms. Cheryl Knolls, plaintiff's supervisor at the time, placed plaintiff in a light-duty position as a distribution clerk. While the job of distribution clerk is a real position, it normally requires activities outside of plaintiff's restrictions. Ms. Knolls testified that she "basically kind of created a position for [plaintiff]." In order to meet plaintiff's restrictions, her job duties were culled from those of existing positions and were limited to delivering small packages to areas of the hospital using a service cart with four wheels on it. Plaintiff worked night shift when the need for delivering packages was the lightest. The distribution clerk position allowed plaintiff to both sit and stand. When plaintiff ultimately left the position of distribution clerk, the duties she performed were merged back into existing positions and her job was not refilled.
15. Based upon the greater weight of the evidence, the Full Commission finds that the duties assigned to plaintiff in the position of distribution clerk made it a "make-work" position which was not available in the competitive job market and thus was not indicative of plaintiff's wage-earning capacity.
16. Plaintiff had difficulty performing the job of distribution clerk. She did not always deliver packages to the correct locations, and she frequently failed to secure the requisite signatures on delivered packages. Plaintiff received a number of warnings for her errors. On 6 March 1997, plaintiff received a verbal warning, documented by defendant, for failing to properly deliver a package. Plaintiff did not deliver the package to the proper person or obtain the required signature. On 18 March 1997, plaintiff also received a verbal warning, documented by defendant, for failing to obtain the necessary signatures on the packages.
***
19. There is no evidence of record that plaintiff purposely failed to perform her job or that she willfully or constructivelyrefused to perform the job duties assigned. Further, as the employment in question is deemed a "make-work" job, plaintiff's termination does not constitute a constructive refusal of suitable employment.
***
23. Because plaintiff's condition of right upper extremity pain has persisted since the date of her injury by accident and the medical records did not adequately address the issue of causation, the Full Commission on 13 September 2002, ordered that the record be reopened in this case for the admission of additional evidence in the form of an Independent Medical Examination of plaintiff. The matter was referred to the Industrial Commission Nurses' Section to arrange an appointment for plaintiff with orthopedist, Dr. Richard Moore. On 20 December 2002, Dr. Moore examined plaintiff as well as the records of her prior medical treatment by other physicians. He noted that plaintiff's right arm exhibited signs of chronic use of a splint, with slight subtle forearm atrophy. Dr. Moore's impression at that time was that plaintiff suffered from "chronic right upper extremity pain of unclear etiology." He noted that electrical studies which had been previously recommended, but not performed, were needed. Pursuant to an Order of the Full Commission, these tests were scheduled.
24. The EMG and NCV studies recommended by Dr. Moore were performed on 16 January 2003. Dr. Moore reviewed the studies and found "evidence of severe right carpal tunnel syndrome" and "mild right ulnar neuropathy at the elbow with focal slowing in the retrocondylar groove." He further noted a possibility that plaintiff suffers from a "chronic regional pain syndrome." Dr. Moore recommended carpal tunnel release surgery. Plaintiff is currently determining whether to undergo the surgery. Dr. Moore is of the opinion and the Full Commission finds that plaintiff's carpal tunnel syndrome and right upper extremity problems are causally related to her June 1995 injury.
25. Dr. Moore's diagnosis of carpal tunnel syndrome and mild right ulnar neuropathy is given greater weight by the Full Commission than the contrary opinions of plaintiff's other treating physicians who did not have the benefit of the electrical testing which Dr. Moore considered.
26. The record contains a Form 21 Agreement for Compensation dated 18 June 1996 in I.C. No. 558162, wherein defendant admitted liability and agreed to pay plaintiff compensation for 4.8 weeks based upon a permanent partial disability rating of "2% to the arm, plus one week waiting period" pursuant to the rating plaintiff received from Dr. Markworth. The Industrial Commission approved the Form 21 on 3 April 1997.
***
29. Plaintiff's current disability is causally related to the June 1995 injury by accident and the subsequent aggravation of her condition on or about May 1996. Plaintiff has not reached maximum medical improvement in this claim.
***
Conclusions of Law
***
3. Plaintiff's current conditions of carpal tunnel syndrome and chronic right upper extremity pain are either caused by or are the direct and natural consequence of her compensable injury of 25 June 1995, which was aggravated by lifting a package at work on 14 May 1996. Accordingly, plaintiff is entitled to indemnity compensation for the loss of wage earning capacity as a result. N.C. Gen. Stat. § 97-29.
4. Plaintiff's various light duty positions with defendant subsequent to her 25 June 1995 injury, including the duties created for the position of distribution clerk, were not jobs readily available in the competitive job market; therefore, they do not constitute suitable employment and do not demonstrateplaintiff's wage earning capacity. N.C. Gen. Stat. § 97-32. Further, plaintiff has shown that her inability to maintain continuing employment is due to her work-related injury; therefore, plaintiff has not constructively refused suitable employment. N.C. Gen. Stat. § 97-32; Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996).
5. A change of condition is defined as a substantial change in the claimant's physical capacity to earn wages, occurring after a final award of compensation, different from that existing when the award was made. Bailey v. Sears Roebuck & Co., 131 N.C. App. 649, 508 S.E.2d 831 (1998). In this case, plaintiff is not required to demonstrate a change of condition. Plaintiff has proven by the greater weight of the evidence that she has not regained her pre-injury wage earning capacity. Even if plaintiff has sustained a change of condition, the Form 18 filed by plaintiff for aggravation of her 25 June 1995 injury satisfies the requirements of N.C. Gen. Stat. § 97-47.
6. Plaintiff is entitled to the payment of weekly compensation in the amount of $133.12 from 3 June 1997 through the present and continuing until further Order of the Commission, with the exception of those periods of time during which she was employed by Elder Care and Hospice. During those periods of temporary, part time employment, plaintiff is entitled to temporary partial disability compensation in accordance with the Act. N.C. Gen. Stat. §§ 97-29; 97-30.
7. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of her injury by accident so long as it tends to effect a cure or give relief, including the performance of carpal tunnel release surgery. N.C. Gen. Stat. § 97-25.
The medical center argues that the full Commission erred in awarding Ms. Spicer temporary total and temporary partial disability after finding that Ms. Spicer's position as adistribution clerk was "make work." The medical center argues that even if it is "make work" the findings of fact do not support the conclusions of law that Ms. Spicer's behavior leading to termination is excused. We disagree.
"In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). To support a conclusion of disability, the plaintiff must prove and the full Commission must find that: (1) plaintiff was incapable after her injury of earning the same wages earned prior to injury in the same employment, (2) plaintiff was incapable after her injury of earning the same wages she earned prior to injury in any other employment, and (3) plaintiff's incapacity to earn wages was caused by her compensable injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982); Effingham v. Kroger Co., 149 N.C. App. 105, 111, 561 S.E.2d 287, 292 (2002). After these elements are proven, "the burden shifts to [the employer] to show that plaintiff is employable." Dalton v. Anvil Knitwear, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257 (1995).
"However, the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages." Saums v. Raleigh Cmty. Hosp., 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). The tendered employment must accurately reflect the employee's ability to compete with others in the job market in order for theemployment to be indicative of an employee's earning capacity. Peoples v. Cone Mills Corp., 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986). Thus, "if other employers would not hire the employee with the employee's limitations at a comparable wage level . . . [or] if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market[,]" the job is "make work" and is not competitive. Id.
The evidence in this case shows that the job of distribution clerk is an actual job. The position entails the employee to deliver packages using a wheeled cart to various places in the hospital. Due to Ms. Spicer's work restrictions, the hospital modified the position for Ms. Spicer by having her deliver only light-weight packages. Ms. Spicer's supervisor testified that "we basically kind of created a position for her."
Although much of the evidence tends to support a finding of modification, the full Commission made a finding of fact of "make work" supported by the supervisor's statement. It is not the job of this Court to re-weigh the evidence. Adams, 349 N.C. at 681, 509 S.E.2d at 414. Since there is competent evidence to support these findings of fact of a "make work" position, they will not be disturbed on appeal. Morrison, 304 N.C. at 6, 282 S.E.2d at 463. The medical center also argues that even if Ms. Spicer's position as a distribution clerk is considered "make work," Ms. Spicer is not entitled to any workers' compensation as she constructively refused employment by being terminated for cause. We disagree. This Court has previously stated:
where an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, such termination does not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability. . . . Therefore, in such cases the employer must first show that the employee was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated. If the employer makes such a showing, the employee's misconduct will be deemed to constitute a constructive refusal to perform the work provided and consequent forfeiture of benefits for lost earnings, unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability.
Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 233-34, 472 S.E.2d 397, 401 (1996) (emphasis added).
In this case, there is no evidence that the medical center would not have terminated Ms. Spicer had she been a nondisabled employee. The medical center terminated Ms. Spicer for failing adequately to perform her job after she had received repeated verbal and written warnings. Thus, the medical center met the first prong of the constructive refusal test. But the full Commission found that Ms. Spicer's position was a "make work" position and therefore could not be obtained in the competitive job market. The full Commission also found that Ms. Spicer's work-related injury prevented her from holding a job in her previousoccupation as a Certified Nursing Assistant. Therefore, Ms. Spicer meets the second prong of the test in Seagraves entitling her to workers' compensation. Id.
The medical center next argues that the full Commission erred in finding that Ms. Spicer did not need to assert a compensable change in condition. We disagree.
Section 97-31 of the North Carolina General Statutes provides that payment for disability shall be paid "during the healing period." N.C. Gen. Stat. § 97-31 (2003). The healing period ends when "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." Crawley v. S. Devices, Inc., 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976). The point at which the injury has stabilized is often called "maximum medical improvement." Carpenter v. Indus. Piping Co., 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985).
The full Commission found that Ms. Spicer had not reached maximum medical improvement in this claim. The full Commission's findings were supported by the testimony of Dr. Moore, who stated that Ms. Spicer continued to have pain and wear a wrist splint due to carpal tunnel syndrome. See Morrison, 304 N.C. at 6, 282 S.E.2d at 463. The full Commission also concluded that Ms. Spicer still might benefit from carpal tunnel release surgery. Therefore, Ms. Spicer was still in the healing period and entitled to ongoing disability payments. N.C. Gen. Stat. § 97-31. Since Ms. Spicer was still in the healing period, there was no need for Ms. Spicer to assert a change in condition to obtain disability payments. The medical center's final argument is that the full Commission erred in finding that Ms. Spicer's original work-related injury caused carpal tunnel syndrome in her right hand, because it lacked competent evidence. We disagree.
The medical center contends that the full Commission erred by relying on Dr. Moore's testimony as opposed to Ms. Spicer's treating physician Dr. Markworth. Because Dr. Moore did not examine Ms. Spicer until seven and one-half years after the injury, the medical center contends that this opinion should not be given any weight. But, again, it is not the role of this Court to determine the credibility of witnesses or weigh the evidence; that is the job of the full Commission. Adams, 349 N.C. at 681, 509 S.E.2d at 414. Accordingly, we will not disturb these findings of fact on appeal.
Affirmed.
Judges HUNTER and THORNBURG concur.
Report per Rule 30(e).