***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS in part and REVERSES in part the Opinion and Award of Deputy Commissioner Phillips.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties in the Pre-Trial Agreement as:
 STIPULATIONS
1. The employee is Benjamin Hoffman who was an employee of defendant-employer on December 12, 1996.
2. The employer is Volvo Construction Equipment North America.
3. At the time of the alleged injury by accident, the carrier on the risk was American Protection Insurance Company.
4. On December 12, 1996, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
5. The employer-employee relationship existed between the employer and the employee on December 12, 1996, the date of the injury.
6. Plaintiff's claim is for an injury to both of his arms and wrists, which said claim defendants accepted as compensable.
7. The parties entered into a Form 21 on July 28, 2000. Plaintiff alleges a subsequent change of condition pursuant to N.C. Gen. Stat. §97-47.
8. The parties stipulated into evidence the following: plaintiff's medical records; January 6, 2003 and April 4, 2003 letters to plaintiff's counsel from Cynthia Chitwood; February 17, 2003, February 25, 2003 and April 22, 2003 letters from plaintiff's counsel to defense counsel; and the records of the January 8, 2004 nerve conduction study by Dr. Cecil Durham.
9. During the spring of 2003, attorneys for plaintiff and defendants had several telephone conversations regarding plaintiff's request for medical treatment. Notwithstanding the January 6, 2003 letter from the carrier's claims representative, Cindy Chitwood, authorizing a one-time evaluation by Dr. Pekman, plaintiff was unable to schedule an appointment with Dr. Pekman. Plaintiff testified that Dr. Pekman's office refused to schedule an appointment for plaintiff. On several occasions before and after the January 6, 2003 letter from Ms. Chitwood, plaintiff's counsel, on behalf of plaintiff, requested assistance from defendants in making such appointment. No appointment was ever made for plaintiff to return to Dr. Pekman for evaluation.
10. The issues before the Commission are whether plaintiff sustained a change in condition pursuant to N.C. Gen. Stat. § 97-47, and whether plaintiff received care from Dr. Stephen K. Westly which was not authorized by the employer or the carrier, for which defendants should be responsible.
 ***********
Based upon all of the competent stipulated evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On December 12, 1996, plaintiff sustained an admittedly compensable injury by accident, which resulted in a compensable claim for an injury to his right upper extremity and left knee.
2. Plaintiff was treated by Dr. Lacy Thornburg, who on January 15, 1997 allowed plaintiff to return to work without any restrictions.
3. On January 29, 1997, plaintiff's restrictions were changed to use his right hand as an "assist only." These restrictions continued until May 30, 1997 when Dr. Thornburg told plaintiff he could return to normal use at work.
4. On September 16, 1997, Dr. Thornburg performed surgery on plaintiff's right wrist and elbow.
5. On December 1, 1997, Dr. Thornburg released plaintiff to return to work with a restriction on the use of his right hand.
6. On February 6, 1998, plaintiff was released to full-duty without any restrictions and given a 7% rating by Dr. Thornburg. After his release, plaintiff began complaining of additional pain in both his right and left arms. After conservative treatment, plaintiff's care was transferred from Dr. Thornburg to Dr. Bruce Minkin.
7. Dr. Minkin restricted plaintiff's work to no heavy lifting or pulling with his right hand. From Dr. Minkin, plaintiff's care was transferred to Dr. William Pekman.
8. On September 16, 1998, Dr. Pekman performed a second surgery to plaintiff's right wrist and elbow. Less than two months later, on November 2, 1998, plaintiff was released to return to work without restrictions.
9. On January 7, 1999, Dr. Pekman performed surgery on plaintiff's left wrist to treat carpal tunnel syndrome, an admittedly compensable injury.
10. By May 7, 1999, Dr. Pekman found plaintiff to be at maximum medical improvement and assigned a 21% permanent partial impairment to plaintiff's right upper extremity and a 5% permanent partial impairment to plaintiff's left hand. Plaintiff returned to work.
11. On May 28, 1999, plaintiff called Dr. Pekman complaining of pain during his use of vibrating tools. Dr. Pekman then restricted plaintiff from using vibrating tools.
12. After his rating from Dr. Pekman, plaintiff requested that he be allowed to see orthopedist Dr. Stephen Westly for a second opinion.
13. On October 18, 1999, plaintiff saw Dr. Westly and complained of persistent waxing and waning of tingling and numbness in the ulnar aspect of the palm and the ring and small fingers. For these particular complaints and others, Dr. Westly concurred with Dr. Pekman's ratings and did not make any changes. This was the last time plaintiff received an impairment rating to his left or right upper extremities. Defendants paid plaintiff the permanent partial disability ratings to his right arm and left hand.
14. On September 27, 1999, plaintiff slipped on water and fell down a set of steps injuring his right elbow. He went to the emergency room and was later seen on several occasions by Drs. Plemmons and Trott.
15. On January 18, 2000, plaintiff was carrying computers when he injured his right arm. For the next week, plaintiff worked but was unable to use his right arm.
16. On May 22, 2000, plaintiff was picking up a part when he sustained a low back muscle strain. Plaintiff was out of work from May 22, 2000 through October 20, 2000 for this muscle strain. During this period of time, plaintiff saw Dr. Ronald Plemmons for his complaints of back pain, but he did not make complaints of left elbow pain or numbness.
17. On March 14, 2001, plaintiff saw Dr. Plemmons complaining of pain in his left upper extremity. Plaintiff had numbness in his left arm and pressure and burning from his elbow to his fingers. After an examination, Dr. Plemmons diagnosed plaintiff with left cubital tunnel syndrome. Dr. Plemmons regularly sees patients for defendants.
18. Plaintiff last saw Dr. Plemmons on March 26, 2001 and stated that his left upper extremity pain had gotten worse. Dr. Plemmons believed that the event triggering plaintiff's pain occurred close to the March 2001 appointments since plaintiff's complaints increased from March 14 to March 26, 2001.
19. After his March 26, 2001 visit with Dr. Plemmons, plaintiff asked defendants to authorize and pay for a referral to a hand surgeon. Since Dr. Plemmons did not believe that plaintiff's complaints were related to his employment, no such referral was authorized.
20. Plaintiff left the employer on November 30, 2001 due to a reduction in defendants' work force.
21. On March 21, 2002, plaintiff filed a Form 33 requesting a hearing before a Deputy Commissioner claiming that he had sustained a change of condition and needed additional medical treatment.
22. In the spring of 2003, in an effort to resolve these issues, defendants authorized plaintiff to return to see Dr. William Pekman, the physician who had previously treated plaintiff and performed two of the three upper extremity surgeries.
23. Because plaintiff was unable to schedule an appointment with Dr. Pekman, he chose instead to return to Dr. Stephen K. Westly. On March 12, 2003, Dr. Westly reevaluated plaintiff. At the appointment, plaintiff complained of both waxing and waning of tingling and numbness in the ulnar aspect of the palm and in the ring and small fingers and pain in his elbow, which were the same symptoms plaintiff had when he saw Dr. Westly on September 18, 1999. Plaintiff's only new complaint was pain in his left elbow for which Dr. Westly diagnosed cubital tunnel syndrome. Dr. Westly felt plaintiff developed this condition due to overuse of his left arm to compensate for restricted use of his right arm because of his compensable injuries. In his medical notes Dr. Westly explained plaintiff's condition as follows:
 No precise relationship between [plaintiff's] original injury to the right wrist in a fall and his development of nerve compression/impingement in the left upper extremity can be determined at this time. He does appear to be significantly prone to development of peripheral nerve compression and impingement in the upper extremities based on his prior history. This being the case, relative overuse of the left upper extremity as a consequence of relative impairment in the right upper extremity might be seen to increase the likelihood of [plaintiff] developing clinically significant nerve impingement/compression at the wrist and elbow levels in the course of regular usage of the extremity when compared to the general population.
24. At the time of the Deputy Commissioner hearing, plaintiff was self-employed as an automotive mechanic and was also a full-time student at Asheville-Buncombe Community College in the automotive technology curriculum.
25. Plaintiff and his wife operate a mobile automotive maintenance business called Auto-Doc. As an automotive mechanic with Auto-Doc, once or twice a week plaintiff travels to customers' cars and changes their batteries and their oil. Plaintiff also removes and replaces brake pads on these vehicles. To do this work, he needs no assistance from anyone and is not limited by any medical condition.
26. Plaintiff started his course work at the community college in May 2002. His course work includes both traditional classes and automotive classes. The traditional classes include a computer class. As for the automotive classes, plaintiff changes tires and removes, disassembles and rebuilds automobile starters and alternators. He also took an engine rebuilding class. Plaintiff has no medical restrictions and has no problem doing the highly detailed automotive work.
27. The Full Commission gives greater weight to the opinions of Dr. Westly than to those of Dr. Plemmons and finds based on the greater weight of the credible evidence that plaintiff's left upper extremity condition is causally related to the compensable injury by accident to plaintiff's right arm. However, the greater weight of the evidence of record does not support a finding that the left upper extremity condition has affected plaintiff's wage earning capacity. After plaintiff lost his job in November 2001 due to the reduction in force, he took himself out of the employment market and became a full-time student. He subsequently started his own business. Plaintiff has been physically able to do the automotive work required in his classes and in his self-employment.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on December 12, 1996. N.C. Gen. Stat. § 97-2(6). Defendants stipulated in the Pre-Trial Agreement that plaintiff sustained compensable injuries to both arms and wrists.
2. In an action for additional compensation for medical treatment, the medical treatment sought must be directly related to the original compensable injury. "If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury. Reinninger v. Prestige Fabricators, Inc.,136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999) (quoting Pittmanv. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 472 S.E.2d 18 (1996)); Parsons v.Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. In the case at bar defendants failed to produce medical evidence to rebut this presumption. Defendants failed to prove by the greater weight of the evidence that plaintiff's left elbow condition was not directly related to the compensable 1996 injury and therefore plaintiff is entitled to the presumption that the left elbow condition is causally related to the compensable injury by accident. Parsons v. Pantry, Inc.,supra.
4. As a direct result of the compensable injury by accident to plaintiff's right arm, plaintiff developed left cubital tunnel syndrome and therefore plaintiff is entitled to payment by defendants of all medical treatment incurred or to be incurred by plaintiff for this condition, including the treatment by Dr. Westly. N.C. Gen. Stat. §§97-2(6), 97-25.
5. A change of condition for purposes of N.C. Gen. Stat. § 97-47 is "asubstantial change in physical capacity to earn wages, occurring after a final award of compensation, that is different from that existing when the award was made." Bailey v. Sears Roebuck Co., 131 N.C. App. 649,654, 508 S.E.2d 831, 835 (1998) (emphasis added). The critical factor is whether there is a change of condition that affects the employee's wage earning capacity. Blair v. American Television CommunicationsCorp., 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996); Lucas v.Bunn Manuf. Co., 90 N.C. App. 401, 368 S.E.2d 386 (1988).
6. Although plaintiff has developed left cubital tunnel syndrome, he has failed to prove by the greater weight of the evidence that, as a result of the condition, he has sustained any change in his wage earning capacity. Plaintiff has put forth no evidence that he is unable to work in any employment, that he has been unable to find employment, that it would be futile for him to look for employment, or that he has obtained employment at a wage less than he earned before his injury due to his injury. Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). Therefore, plaintiff has not sustained a change of condition as provided in N.C. Gen. Stat. § 97-47 and is not entitled to any further disability compensation.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical treatment related to plaintiff's left cubital tunnel syndrome. The approved medical treatment includes care by Dr. Westly and Dr. Westly is approved as treating physician.
2. In that plaintiff has not sustained a change of condition under N.C. Gen. Stat. § 97-47, plaintiff is not entitled to any additional disability compensation.
3. Defendants shall bear the costs.
This the 5th day of January, 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb